# THE WASHINGTON COUNTY WATER COMPANY *vs.* SAMUEL B. GARVER.

*Water-courses—Diversion of Stream Flowing in Subterranean Channel—Damages for Loss of Profits in Operating a Mill—Evidence—Instructions to the Jury.*

When a stream of water flows in a known channel underground from a certain place to a point on plaintiff's land where it emerges, and does not merely percolate through the soil, the plaintiff's right to such stream is governed by the rule that a riparian owner is entitled to the natural stream of water flowing through his land as to both its quantity and quality, and he may maintain an action against a person who diverts this water from such underground channel.

The evidence in this case examined and held to be sufficient to show that a stream of water flowed underground in a definite channel and emerged on plaintiff's land.

Plaintiff's mill was run by water from a stream passing through his land. The stream was fed in part by water coming to his land by means of a subterranean channel. Defendant erected a dam at some distance which prevented the water from running in the underground channel as it previously ran, and at certain seasons deprived plaintiff of sufficient water to operate his mill. In an action to recover damages, the jury were instructed at the instance of the plaintiff, that he was entitled to recover if the defendant diverted an *appreciable* quantity of water and diminished the flow to the mill. *Held*, that although this instruction standing alone might be objectionable, yet it was not erroneous when taken in connection with the instructions granted at the instance of the defendant, which were that the plaintiff is not entitled to recover, unless the jury find that the water diverted would have been sufficient, if added to the other sources of supply, to operate the mill, and that if at certain seasons of the year the quantity of water diverted was very small, and not enough to affect the operation of the mill, then, for such times, the plaintiff is not entitled to recover for loss of profits.

In such action the plaintiff is entitled to recover as damages the loss of profits in running the mill, if occasioned by the diversion of the stream, and any injury he sustained by being deprived of the use of the water for irrigating his land, watering his stock and other domestic purposes up to the time of bringing the suit. In this case the evidence was legally sufficient to show that there had been such a loss of profits so occasioned.

The objection that there is no evidence to support a granted instruction will not be entertained on appeal unless such objection was made in the Court below.

Appeal from the Circuit Court for Garrett County, (Boyd, C. J., and Sloan J.) The plaintiff's second prayer was that if the jury find for the plaintiff, then in assessing the damages they may take into consideration the loss of profits in running said mill, if they find there was any such loss occasioned by the act of the defendant, and any injury they may find the plaintiff sustained by being deprived of the use of the water for irrigating his land, watering his stock or other domestic or household purposes up to the bringing of this suit, to wit, the 14th of November, 1896.—(Substituted.)

*Defendant's 1st Prayer.*—That to enable the plaintiff to recover in this action it is necessary that he shall show to the satisfaction of the jury that the water from the streams known as Raven Rock and Warner Gulch streams, after sinking into the earth, flow under the earth in a well-defined channel and does not reappear on the surface, and that no sufficient evidence being offered of such flowing under the earth in a well-defined channel and of its reappearance on the surface, the plaintiff is not entitled to recover.—(Rejected.)

*Defendant's 4th Prayer.*—That if the water, the diversion of which is complained of in this action, before reaching the place known as Rohrer's Spring, gradually and at different points along the bed of the stream sinks into the earth and disappears, that then the plaintiff is not entitled to recover.—(Rejected.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Schmucker and Jones, JJ.

*Alexander Neill* (with whom was *S. B. Loose* on the brief), for the appellant.

Was there sufficient evidence to go to the jury to establish a stream of water flowing underground in a well-defined channel and thereafter emerging at Rohrer's Spring? This question is broadly put in the 1st prayer of the appellant, which the Court below rejected.

No case has gone so far as to hold that a lower riparian proprietor would be protected as to water which was percolating through sand or gravel, within limits not at all defined by anything appearing on the surface, or made to appear by investigation beneath the surface. The appellee, to support the theory that there was something definite by matters appearing on the surface and by investigation beneath the surface, offered proof tending to show: 1st. That the water became muddy in the spring when it rained: 2nd. That the water in the spring lowered the day the stream was turned into the appellant's pipes: 3rd. That 50 years ago an experiment was made by throwing chaff into the sink-hole.

As to the 1st point. The reason why the water in the spring became muddy cannot be determined. It was occasioned by something which happened underground. No proof was offered other than that there was rain along the stream in controversy, but it cannot be insisted that it may not have been occasioned by rain affecting another stream which fed the spring. In itself this condition of muddiness in the spring as to its origin is purely speculative, and certainly does not tend to prove that the waters of Raven Rock and Warner Gulch flowed in a well-defined channel underground.

2nd. The allegation of the water being lowered in the spring the day it was turned into pipes might be proof tending to show a diversion of the stream. But it is not uncontradicted. Other testimony shows that, on the day it was so turned in, the stream dried up before it reached the sink-hole, and that no stream could have gone to the spring.

3rd. It was within the power of the appellee to furnish the jury with the result of investigations made just before the trial. He should not depend on the chaff experiment made a half-century ago, when he could have repeated it at the time of the suit, could have opened the ground and in many other ways shown a condition of affairs to justify a conclusion.

In the absence of evidence tending to prove that it is a well-defined subterranean stream, it will be presumed that the spring was fed and formed by the percolation of water through the surrounding soil and was not the outbreak, on the surface, of a subterranean stream. *Hoddeman* v. *Brinhart*, 84 Am. Dec. 511 ; *Hanson* v. *McCue*, 42 Cal. 303 ; *Ellster* v. *Springfield*, 30 N. E. R. 278 ; *Swett* v. *Cutts*, 50 N. H., 439 ; *Case* v. *Hoffman*, 72 N. W. R., 390 ; *Davis* v. *Spaulding*, 32 N. E. R., 650 ; *Metcalf* v. *Nelson*, 65 N. W. R. 611; *Wheatley* v. *Baugh*, 64 Am. Dec. 727, note. If it is not affirmatively shown that surface water is supplied by a definite flowing stream the presumption is that it comes from ordinary percolation. *Tampa Water Works* v. *Cline*, 20 South R. 786.

The plaintiff's first prayer permits a recovery if an *appreciable quantity* was diverted and the flow thereby diminished, irrespective of the fact whether the quantity so diverted and the diminished flow affected the use of the mill. In *Frazier* v. *Brown*, 12 Ohio St. 294, the word used is "*substantially*" undiminished—a word very different from "*appreciable.*" One betokens substance, the other "*perception*"— a something that can be estimated or discovered by the senses or intellect. Judge Story in *Tyler* v. *Wilkinson*, 4 Mason, 397, says : "The diminution, retardation or acceleration, not *positively* and *sensibly* injurious by diminishing the value of the common right, is an implied element in the right of using the stream at all." The third prayer should not have been granted, because, whilst the legal proposition therein stated may be correct, there is an entire absence of evidence to support it. It must be based upon the allegation or theory of the diversion of water between August and November, 1896, the period within which a recovery is limited. There is no evidence that, during this time, the stream reached the sink-hole. If it did not, but wasted itself away in the upper channel, it was percolating water, for the diversion of which there can be no recovery. *Metcalf* v. *Nelson*, 65 N. W. Rep. 912 ; *Elster* v. *City*, 30 N. E. Rep. 278.

*C. A. Little*, for the appellee.

Plaintiff's first prayer is founded upon a correct proposition of law. *Baltimore* v. *Warren Mfg. Co.*, 59 Md. 96; *Gladfelter* v. *Walker*, 40 Md. 1; *Baltimore* v. *Appold*, 42 Md. 442; *Beasley* v. *Shaw*, 6 East, 208; *Mason* v. *Hill*, 5 B. and Ad. 1; *Wood* v. *Waud*, 3 Exch. 748; *Parker* v. *Griswold*, 42 Am. Dec. 739; *Buddington* v. *Bradley*, 26 Am. Dec. 386; 2 *Washburn on Real Property*, 62; *Washburn on Easements and Servitudes*, 317, &c. The plaintiff was entitled to have the advantage of a flow of water in his own lands without diminution or alteration, and we submit that a prayer to that effect was proper.

The Plaintiff's 2nd prayer is a proper statement of the law as to the measure of damages. If there was a diversion of the stream the plaintiff was bound to recover damages if only nominal, but the evidence shows that special uses had from time immemorial been made of the water and water-power in this case. The value of the use of the water during the time the plaintiff was wrongfully deprived of it is usually the true measure of damages in these cases. *Pollit* v. *Long*, 58 Barb. 20; *Sedgewick on Measure of Damages*, 153 and note; *Parker* v. *Griswold*, 17 Conn. 288; *Bowen* v. *Hill*, 1 Bing. N. C. 549; *Sedgwick on Damages*, 8th Ed., sec. 941 and notes; *Pinney* v. *Berry*, 61 Mo. 359.

The evidence shows that about 300 yards above the Rohrer Spring in the bed of the stream, there is a sink-hole, and that at this sink-hole a large portion of the water sinks; that the remainder of the water continues to run down the bed of the stream to the plaintiff's mill-dam, and the portion that went into the sink-hole runs in an underground channel, emerges at Rohrer's Spring and from thence flows into the plaintiff's mill-dam also. This prayer was simply an instruction to the jury to allow them in determining the extent of the diversion and diminution to take into consideration the water that ran from the sink-hole in the underground channel *as well* as the water that continued down the bed of the stream. The fact that a stream of

water runs underground does not deprive it of any of the rights pertaining to streams on the surface, provided it runs in a channel, as distinguished from mere percolating water. The evidence shows that the water ran from the sink-hole to the spring in large quantity and in a channel. *Washburn on Easements*, 4th ed. 505, &c.; *Whetstone v. Bowser*, 29 Pa. St. 60; *Arnold* v. *Foote*, 12 Wend, 332; *Smith* v. *Adams*, 6 Paige, 435; *Wheatley* v. *Bauch*, 25 Pa. St., 528; *Parker* v. *Boston*, &c., *R. R. Co.*, 3 Cush. 107; *Mahon* v. *Brown*, 13 Wend. 261; 27 *Am. & Eng. Ency.*, 424 and notes; 2 *Washburn on Real Property*, 70; *Shively* v. *Hume*, 10 Oregon, 76; *Jaggard on Torts*, 758; *Willis* v. *City of Perry*, 60 N. W. 727; *Burroughs* v. *Saterlee*, 67 Iowa, 396,

In *Craig* v. *Borough of Shippensburg*, 7 Pa. Superior Court, 526; the Court said, when in an action for damages for the diversion of a stream thereby destroying a spring on plaintiff's land, alleged to have been fed by percolation from the stream, evidence was produced tending to show that the spring became dry whenever the flow of the stream was shut off, *then it was a question for the jury* as to the effect on the spring of the diversions of the stream. The same rules as to the province of the jury to pass on the evidence applies here. *Washburn on Easements and Servitudes*, 4th ed. 504; *Luther* v. *Winnisimmet Co.*, 9 Cush, 171.

The fact that a stream flows into a sink, if it flows in a definite direction and emerges upon the surface again and the connection between the two can be traced clearly, will not prevent the application of the rules of an ordinary water-course. *Whetstone* v. *Bowser*, 29 Pa. St. 60.

The cases heretofore referred to upon the question of underground waters, all are based on the theory of underground streams running in channels, but we submit that a diversion of the water as in this case, even if the water did not flow in a well-defined channel from the sink-hole to Rohrer's Spring, but simply percolated through the soil and into the spring, was a wrong for which the defendant was liable, if the use to which the diverted water was put was

not a reasonable one and not consistent with the normal use of the land itself on which the diversion took place. *Swett* v. *Cutts*, 50 N. H. 439; *Bassett* v. *Salisbury Mfg. Co.*, 43 N. H. 561. In these cases the Court held that even percolating waters on *one's own land* could not be interfered with with impunity, if the adjacent land owner was thereby injured, unless the interference was occasioned by some reasonable user of the land itself, and, while these conclusions are not 'accepted by Courts generally, we think they set forth principles applicable to the case in hand. The case of *Acton* v. *Blondel*, 12 Mees and Welsby, 324, seems to be the first case in which the question of underground waters is discussed, but in this case, as well as in the cases following it establishing the law as to the percolating waters, it must be observed that the interference with the percolations was always on the land wherein the water percolated.

In this case the defendant does not interfere with the percolating waters on his own land. They divert a well-defined stream of water on the surface, which, if allowed to flow unobstructed, runs for about a mile and a half in its bed, away from the defendant's lands, to the sink-hole in question, and not until it reaches this point does the question of underground waters arise, and we submit that the authorities allowing a land owner to interfere with percolating waters on his own land, with impunity, does not apply here. *Smith* v. *Adams*, 6 Paige, 435; *Hart* v. *Jamaica Pond Aqueduct Co.*, 133 Mass. 488; *Atty.-Gen.* v. *Jamaica Pond Aqueduct Co.*, 133 Mass. 361; *Smith* v. *City of Brooklyn*, 46 N. Y., S. 141; *Dickenson* v. *Grand Junction Canal Co.*, 7 Exch. 282; *Halderman* v. *Bruckhardt*, 45 Pa. St. 511; *Strait* v. *Brown*, 16 Nev. 617.

FOWLER, J., delivered the opinion of the Court.

This is an action on the case brought by the plaintiff, Samuel B. Garver, against the Washington County Water Company to recover damages alleged to have resulted from the unlawful diversion by it of a water-course.

The only question presented is as to the propriety of the rulings upon the prayers.

During the course of the trial the plaintiff offered testimony tending to prove that he was the owner of the land through which the water-course in question runs; that on said land there was erected a flouring and chopping mill, and that from time immemorial this stream of water, known as " Raven Rock Stream," flowed free from obstruction in a well-defined channel to and through the land of plaintiff and to his mill, except when the waters were low in the summer; that at a point not far from the bed of said stream, about a half-mile up stream from the mill, and several hundred feet from the plaintiff's mill-dam, there is a spring known as " Rohrer's Spring," from which the water also flows into said mill-dam during certain portions of the year; that there is a sink-hole in the bed of said stream about a thousand feet from the point where said stream leaves the defendant's land ; that the land between the sink-hole and the spring is limestone; that during all the time, whether there was sufficient water to carry the stream to the sink-hole or beyond it, a large amount of water goes into said sink-hole and under the surface of the ground at a point in said hole where limestone rocks project into the bed of the stream ; that the defendant in 1896, near the head waters of said stream and about two miles from the lands and mill of the plaintiff, erected dams across the same for the purpose of retaining the water and distributing the same through pipes to its reservoir and from thence to Hagerstown ; that at the time and immediately after the water of said stream was thus diverted by the defendant, the water in the spring sank 8 or 10 inches, and that this diversion has continued to have this effect.  In order to show that the water of the stream flows to the spring through a subterranean passage, the plaintiff offered testimony tending to prove that when the water of the stream runs into the sink-hole the spring is 8 to 10 inches higher than when it does not so run ; that when muddy wate

·runs into the sink-hole the water in the spring soon thereafter becomes muddy also, and that this happens when it has not rained near the spring, but has rained near the source of the stream ; that many years ago an experiment was made by throwing chaff into the sink-hole, and that a short time thereafter chaff appeared on the surface of the water of the spring, and was seen coming out from under the rocks where the spring emerged.    It was further proved that by reason of the diversion of the stream and the sinking of the spring the plaintiff's mill was deprived of sufficient water to operate it, and that prior to said diversion he had sufficient water for that purpose, except in the dry season, when the water was low.    There was also evidence tending to show that the loss to the plaintiff by reason of the diversion of water from the mill amounted to $100 per year, and that the loss arising from deprivation of water for his stock was from fifteen to twenty dollars per year, and that the loss he suffered from the time of taking the water to the time of bringing this suit, was at the same rate for the respective items of loss for such proportion of the year.

The defendant offered evidence admitting the erection of the dam as alleged, but tending to prove a state of facts contradicting the case made out by the plaintiff in regard to the amount of water in the stream and its connection with the spring through the underground passage.

There was a verdict and judgment for the plaintiff for $33.75, the Court having instructed the jury that the plaintiff could only recover for the loss which accrued between the time of diverting the water and the bringing of the suit, that is to say, between the 1st of July and 14th of November, 1896.    The defendant has appealed.

As we have seen, the only exception in the record before us relates to the granting of certain of the plaintiff's, and the refusal to grant certain of the defendant's prayers.    The first, third and fourth prayers of the plaintiff were granted as offered, and his second as modified by the Court, and the first, fourth, fifth and seventh of the defendant rejected.

Before proceeding to consider the action of the Court as above set forth, we will briefly state the general principles of law applicable to a case like this.   However interesting it might be to examine the text-books and the decisions of other States to determine what these principles are and their limitations, we would hardly be justified in so doing when it has been so recently done in the opinion of this Court delivered by JUDGE ALVEY in the case of *Baltimore* v. *Warren Manufacturing Co.*, 59 Md. 103.   While it is true that the case just cited was one in which the defendants were charged with having unlawfully polluted the stream, yet the general principles announced were applied and are applicable as well to an unlawful diminution of quantity as to deterioration of quality.   After stating that, before the time of LORD COKE, the general principles in relation to the pollution of streams had been settled in England, the learned Judge says:   " In more recent times all common law authorities agree that a riparian owner has the right to the natural stream of water flowing by or through his land, in its ordinary natural state, both as to its *quantity* and *quality*, as incident to the right to the land *on* or *through* which the water runs ; and that right continues, except so far as it may have been derogated from by user or by grant."   These general principles are not, and cannot be, controverted by the defendant in this case, but he contends that they have no application to the case at bar, first, because the evidence does not show that there was a flowing water-course which could have been diverted, and secondly, that if there was any such water-course it was in part underground and percolated, in contradistinction to flowing, in a channel to a point from whence it flowed into the plaintiff's mill.   But, whatever may be the merits of these contentions, they both relate to questions of fact which are for the jury.   The plaintiff offered evidence to show that the diverted stream flowed through his land and supplied his mill all the time except for a short period in summer, when the waters are low. Among the definitions of a water-course is the following by

JUDGE BIGELOW in the case of *Luther* v. *Winnisimmet Co.* 9 Cush. 174, which Prof. Washburn characterizes as most accurate and compendious.    " A stream of water *usually flowing* in a definite channel, having a bed, sides or banks, and usually discharging itself into some other stream or body of water.    To constitute a water-course, the size of the stream is not important; it might be very small and the flow of water need not be constant.    But it must be something more than a mere surface drainage over the entire face of a tract of land occasioned by unusual freshets or other extraordinary causes."    The evidence offered by the plaintiff fully answers the demands of the foregoing definition, and we think it may be concluded that whether the existence of the alleged diverted water-course be a question of fact or of mixed fact and law, the jury were fully justified in its finding by the evidence and the Court's instructions. And so in regard to the other contention based on the fact that the stream flowed underground.    Again it is and must be conceded that such a stream will be protected the same as one upon the surface, if it constitutes a stream the channel or course of which is known.    *Washburn on Easements,* s. p. 370.    " It is otherwise when nothing is known as to the sources of supply"—*Ib.*    But in the case at bar, whatever the evidence of the defendant may be, that of the plaintiff is strong and convincing of a direct connection or channel between the sink-hole and the spring.    The muddy water of the stream passing into the sink-hole was always followed by water of same character in the spring.    When chaff was thrown into the water in the sink-hole, chaff was in a short time thereafter seen to appear on the surface of the spring as it emerged with the water from under the rocks, and finally when water was not running in the sink-hole the spring sank 8 or 10 inches, and a corresponding rising was the result when water flowed into that hole.    It may be also remarked that the fact that muddy water found its way from the stream to the spring affords an additional proof that it passed underground in a channel and did not perco-

late through gravel and sand, as suggested by the defendant, for if it reached the spring by percolation it would have been clarified and freed from mud.

We will now briefly consider the prayers of the plaintiff which were granted. By the first prayer the jury were instructed that the plaintiff was entitled to recover if the defendant diverted "an appreciable quantity of water * * * and thereby diminished the flow of water through the said lands and to plaintiff's mill."

The defendant contends that the words "appreciable quantity of water" as used in this prayer are misleading, and would permit recovery for a very small quantity of water without regard to and irrespective of the fact whether the quantity so diverted affected the uses of the mill. But, although we think this objection somewhat hypercritical, yet when the prayer objected to is read with those of the defendant all difficulty disappears. For by the defendant's second, which was granted, the theory is announced that the plaintiff is not entitled to recover for damages to his mill unless they find that the water diverted would have been sufficient, if added to the other sources of supply, to operate the mill. And so by the defendant's third, which was also granted: That to enable the plaintiff to recover in this action for loss of profits in running the mill, it is incumbent on him to show to the satisfaction of the jury that the quantity of water flowing from the streams, known as Raven Rock and Warner Gulch streams, together with the other sources of supply, furnished sufficient power for the proper operation of his mill, and if they further believe that at certain portions of each year the quantity of water, the diversion of which is here complained of, was very small and not of a quantity to affect the operations of his said mill, that for such portions of each year the plaintiff is not entitled to recover for such loss of profits. The plaintiff's second prayer. This was substituted by the Court. No objection was made to it, and we know of none. It states the proper rule of damages applicable to

this case. *Sedgwick on Damages*, sec. 941. Plaintiff's
third and fourth prayers were objected to on the ground
that there was no evidence to support them. But we find
nothing in the record to show such an objection was made
in the Court below, and therefore it will not be entertained
here. *Poe's Prac.*, sec. 299A and authorities cited in notes.

From what we have already said it is apparent we are of
opinion that the evidence offered by the plaintiff in regard
to the character of the underground stream was properly
submitted to the jury and if they believed it, it justified
their verdict, and therefore the defendant's first prayer was
properly rejected. There is no evidence in the record that
the water, the diversion of which is complained of in this
action, gradually and at different points along the bed of the
stream sinks and disappears, before reaching the spring.
On the contrary, as we have already said, there is ample
testimony which was properly submitted to the jury from
which they were justified in finding that some of said water
reached the spring through the underground stream flowing
from the sink-hole to the spring. It follows that defend-
ant's fourth prayer was properly rejected, because it is
based upon the theory that none of said water reached the
spring. And so also we think defendant's fifth prayer was
properly rejected. It is founded on the hypothesis that
after the diversion of the stream by defendant there was
sufficient water at certain portions of the year to operate
the mill in the same manner it was run before the injury
complained of, and that the jury ought to make an allow-
ance to the defendant for such time as they believe from
the evidence there was sufficient water for the operation of
the mill. There is no evidence in the record that at any
time after the diversion of the stream there was sufficient
water to operate the mill in the *same way* it was operated
before the injury complained of. It is true one of the wit-
nesses says " that in wet seasons the plaintiff could grind
his mill," but to what extent, or whether with profit or at
a loss, does not appear. On the contrary the evidence of

both sides show that there was a deficiency—the plaintiff ascribing it to the diversion of the stream and the defendant to a lack of water produced by natural causes. It would have been error, therefore, to grant the fifth prayer of defendant, because there is no evidence to support it. But if the defendant was entitled to have such an instruction we think he got the full benefit of it by his third prayer by which the jury were told that if they believed that at certain portions of each year the quantity of diverted water was so small as not to affect the operation of the mill, that for such portions of each year the plaintiff is not entitled to recover for loss of profits.

Defendant's seventh prayer was properly rejected because we think there is legally sufficient evidence of the loss of profits in operating his mill. Thus there was testimony tending to prove that the capacity of the mill before the diversion was about 12 barrels per day and that the loss caused by deprivation of the water was $100 per year, and that from the time of taking the water to the time of bringing the suit the loss was at the same rate for such proportion of the year as expired between the periods mentioned.

Finding no reversible error in the rulings of the learned Court below, the judgment appealed from will be affirmed with costs.

*Judgment affirmed with costs.*

(Decided June 14th, 1900.)