PETER B. OLNEY, Respondent, Appellant, *v.* CULLULOO PARK COMPANY, Appellant, Respondent.

Second Department, March 28, 1918.

Waters and watercourses — construction of drain to accommodate natural watercourse followed by conveyance of lands to different grantees — right of upper owner to unobstructed flow of waters — distinction between easements in watercourses and right to natural flow of waters — extension of drain by lower proprietor — damages of upper proprietor — cost of maintaining drain not imposed upon lower proprietor until damage to upper proprietor occurs.

Where an owner over whose lands a natural watercourse flowed filled in a part thereof and installed in its place a pipe or drain to accommodate the waters and afterwards conveyed a portion of the land from which

the waters flowed, he imposed a servitude of drainage upon the land retained by him in favor of that conveyed to his grantee.

When said landowner subsequently conveyed the servient estate so burdened with an easement or right of drainage to another grantee, the latter took the land subject to the easement appurtenant to the lands of the upper owner. This upon the theory that the right of drainage through the pipe or drain constituted an easement.

However, and irrespective of the possible existence of an easement, the grantee of the lands from whence the waters flowed acquired a natural right to have said flow continue, because notwithstanding the fact that the waters were conducted through a drain they still remained a natural watercourse, even though in so far as the arrangement was artificial said right might be said to constitute an easement.

The right of an owner to have a natural watercourse flow uninterrupted from his land though sometimes called an easement, is not strictly such but is rather a natural right.

As a general rule the owner of the dominant tenement is chargeable with the cost of the maintenance and upkeep of an easement appurtenant to his property, for he is merely charged with maintaining his own property.

Where the grantee of the servient tenement subsequently built an extension of the pipe or drain in such a manner as to obstruct the flow of water which was backed up upon the lands of the upper owner, there was a violation of the latter's rights, although he was properly chargeable with the cost of upkeep of any easement existing upon the servient tenement. While the owner of the servient tenement had a right to extend the pipe or drain, he is required to maintain the flow of water as it would have existed through the natural watercourse.

However, as the obligation of the lower owner does not rest upon the law of easements, but upon the law of natural watercourses, his land cannot be charged with the expense of maintaining the flow through the pipe or drain extended by him until such time as an obstruction may result to the injury to the property of the upper owner.

Where the lower proprietor by opening and enlarging the channel of the waters, which were once a natural stream flowing to tide water, reduced the force and effect of the current so as to increase the tidal action and cause a gradual deposit of sediment which requires removal by dredging, he is chargeable with the resulting damage to the upper proprietor, but there is no authority for charging the burden on any specific portion of the lower proprietor's lands.

CROSS-APPEALS by the plaintiff, Peter B. Olney, and by the defendant, Culluloo Park Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Nassau on the 25th day of January, 1917, upon

the decision of the court after a trial at the Nassau Special Term, whereby it was adjudged that the plaintiff had an easement in the maintenance of a drain or pipe line which carried a watercourse formerly known as Bannister creek from the land of the plaintiff through that of the defendant to a canal dug by defendant as a partial substitute for the creek; that the duty rested on plaintiff to maintain the pipe line in repair for a distance of 128 feet from his boundary, and upon the defendant and its successor in title from that point for a distance of about 600 feet to the canal; that the burden of expense of maintaining it, so placed on the defendant, should be a charge against a defined portion of its property, to be enforced by an application at the foot of the judgment.

The land now owned by both plaintiff and defendant was formerly owned by one Rand, now deceased. Bannister creek, a natural watercourse, originally flowed through land now owned by plaintiff, and from thence through that now owned by defendant to the Atlantic ocean. In 1898, Rand, being then the owner of both parcels, filled in a part of the creek and installed in its place a pipe or drain, partly in the land now owned by plaintiff, into and through that now owned by defendant, to a point 268 feet from plaintiff's boundary, where it opened into Bannister creek. Plaintiff purchased his property in 1905, and in 1907 the defendant purchased its property, consisting of about sixty acres between the plaintiff's land and the ocean.

That portion of plaintiff's land through which the drain ran, and the defendant's tract, consisted of low-lying meadow land, and Bannister creek was a sluggish, sinuous stream of varying width which drained both parcels. In 1911 the defendant began filling in its land by pumping sand thereon from the creek. In so doing it filled the mouth of the drain and obstructed the flow of water, which was backed up on plaintiff's land, partly flooding it and causing damage. The plaintiff brought this action for an injunction and damages. After issue joined, the case came on for trial on the 19th and 20th days of June, 1912. The evidence of defendant showed that it intended to obliterate a further portion of the creek, construct a canal in place of it for about 9,000 feet from the

ocean, and extend the pipe and connect it with the head of the canal. By arrangement the judgment was held in abeyance pending the work, which, it was anticipated, might afford plaintiff the relief desired. The work proceeded, the canal was built, the pipe was extended to connect with it; and the defendant's land, being then filled in and fit for building, was mapped into plats and streets. The pipe ran through streets, as shown on the map, into the creek. On April 3, 1916, the trial was resumed and resulted in the judgment appealed from.

*Peter B. Olney,* for the plaintiff.

*Henry F. Miller* [*J. Russell Sprague* with him on the brief], for the defendant.

BLACKMAR, J.:

The learned justice who presided at Special Term decided that the plaintiff had, as appurtenant to his land, a right to have the water flow freely and without obstruction through the drain on the defendant's land to its outlet into Bannister creek or into the canal which was a substitute for the creek. This right, in his decision and the judgment entered thereon, is denominated an easement. In so far as it was an artificial arrangement, the name was properly applied; and on the facts found, which, we think, are supported by the evidence, the decision and judgment were justified.

The law will imply a grant of an easement in favor of a grantee more readily than a reservation of one in favor of a grantor. (*Wells* v. *Garbutt,* 132 N. Y. 430; *Johnson* v. *Jordan,* 43 Mass. 234.) When Rand, in 1905, granted a portion of his property to plaintiff, the drain extending through the land reserved was in existence, it was reasonably necessary to the enjoyment of the land granted to plaintiff, and the marks of its existence were apparent so that they might be seen " ' on a careful inspection by a person ordinarily conversant with the subject.' " (*Lampman* v. *Milks,* 21 N. Y. 505, 516.) Rand, therefore, imposed a servitude of drainage upon his own land in favor of that granted to plaintiff. Subsequently, he granted the servient estate, so burdened, to defendant; and it is found as a fact that defendant knew

of the drain in the land it purchased.   We have considered
carefully the elaborate argument directed by defendant against
this finding of fact, but we are not persuaded that it was
not founded on evidence sufficient to sustain it.

But we think that the part of the judgment which adjudges
plaintiff's right to have the drain kept open may be rested
on another rule of law.   The learned justice found " That
in 1896 and prior thereto, while both of said tracts of land
now owned by plaintiff and defendant were owned by said
Rand, except as aforesaid, a natural water course called
Bannister creek flowed from the east to the west nearly
through the center of what is now the land of the plaintiff,
and thence through what is now the land of the defendant,
and thence emptied into the Atlantic Ocean."   This was a
watercourse, and the evidence of the conditions warranted
such finding.   (*Barkley* v. *Wilcox,* 86 N. Y. 140; *Gillett* v.
*Johnson,* 30 Conn. 180; *Macomber* v. *Godfrey,* 108 Mass. 219.)
The right of the owner to have the flow of the water uninter-
rupted from his land, although sometimes called an easement,
is not strictly such but rather a natural right.   (*Scriver* v.
*Smith,* 100 N. Y. 471.)   The existence of such right is so
well established that it needs no further citation of authority.
Rand, while he owned the lot including both parcels, filled
in Bannister creek through a portion of its length and sub-
stituted therefor an underground pipe or drain.   This did
not change the character of the stream; it was still a water-
course although flowing through a pipe.   Such was the situ-
ation when he sold the upper portion of the lot to plaintiff.
The plaintiff had the natural right to have the water flow
from his land, independently of any implication of a grant
of an easement, because it still remained a watercourse.   We
think the plaintiff had the natural right to have this water
flow from his land because Bannister creek was a watercourse,
and that in so far as the drain was an artificial arrangement
it may be said that he had an easement in its use.

The general rule is that the owner of the dominant tene-
ment is chargeable with the cost of the maintenance and
upkeep of an easement appurtenant to his property.   (Washb.
Ease. & Serv. [4th ed.] chap. VI; *Roberts* v. *Roberts,* 55
N. Y. 275; *Brill* v. *Brill,* 108 id. 511.)   This rule is logically

founded on the fact that the easement is appurtenant to and a part of the dominant tenement, and to say that the owner of such tenement is to keep it in repair is only to say that he is at the charge of maintaining his own property. The learned trial justice, mindful of this rule, adjudged that the plaintiff should bear the expense of maintaining the drain for a portion of its length, which, we understand, represented that portion in existence when he purchased the dominant tenement. But as to the extension thereof, built by the defendant pending this action, the defendant is by the judgment charged with its upkeep. We are inclined to think the judgment right in this respect. The stream being a watercourse, any obstruction thereto by the defendant, the effect of which was to back the water onto plaintiff's land, violated plaintiff's right based on the doctrine " *Aqua currit et debet currere ut currere solebat.*" A portion of the stream was piped when plaintiff purchased. As to that, we see no reason why the rule of the common law charging the dominant tenement with the cost of repair should not prevail. But the extension was built solely for the defendant's benefit. It had the right to pipe this stream provided it did not obstruct the flow to plaintiff's damage; but it must maintain the flow through the pipes as it would have existed through the open creek, or, to speak perhaps more accurately, it must see to it that piping the creek does not obstruct the flow to plaintiff's injury. The obligation rests on defendant, not because the drain as extended is a servitude on its land located by agreement with the owner of the dominant tenement, but because Bannister creek was a watercourse. (*Oliver* v. *New York Bay Cemetery Co.*, 38 N. J. Eq. 109.)

We do not think, however, that the judgment may now determine that the expense of repairing the drain shall be a charge on the land of the defendant or any specified portion thereof. Although the parties have presented elaborate briefs filling about 250 printed pages and evidencing a careful and extended search for authorities to aid the court, no case nor text writer has been cited to sustain this provision of the judgment. Defendant's obligation does not rest on the law of easements. According to that law, it would be under no obligation to maintain the drains. As to this, the law

of watercourses prevails. The law is that it shall do no act to obstruct the flow to the injury of the property above on the stream. Until such act is done, there is no liability. It is liable, not because it is the owner of a servient estate, but because it caused the obstruction. The defendant adopted a method of controlling Bannister creek by inclosing it in a pipe, which, it is apprehended, may result in an obstruction which may injure plaintiff's property. Whether it will do so rests in conjecture. There is at present no obstruction, and, therefore, at present no obligation measured by a money value which can be the subject of a charge or lien. If, in the future, it be shown that the obstruction has resulted in a violation of plaintiff's rights, the remedy must be applied as circumstances permit. This line of reasoning results in a reversal of that part of the judgment which provides that the expense of maintaining the flow through the pipe into the canal shall be a charge on defendant's land.

We see no reason for interfering with the decision of the trial court on the subject of damages. It is a question of fact what damages were caused by interfering with the flow of the stream and what by interruption of the flow of surface or percolating water. For the former the defendant is liable; for the latter it is not. This difficult question of fact was peculiarly within the province of the trial justice; and we do not find that in solving it any erroneous rule of law was applied or any material error made in the admission or exclusion of evidence.

The judgment should be modified in accordance with this opinion, and as modified affirmed, without costs, and with disbursements for printing the case divided equally between the parties.

JENKS, P. J., MILLS and RICH, JJ., concurred.

PUTNAM, J.:

I agree generally with Mr. Justice BLACKMAR. The obligation to keep open the water, and to clear it of that which may obstruct its natural flow, in my view does not arise from the law of servitudes which grow out of the assent or acquiescence of some landowner, but inheres in the nature of the thing itself. We have a finding that Bannister creek

was a natural open watercourse flowing through the premises of George Rand, and thence through lands of defendant to the ocean. Rand had covered a part of this creek in a pipe or conduit (with lateral feeders), which pipe followed the defined line of the creek. Being thus piped with manholes, the creek emerged as an open stream into the meadows at a point 280 feet from the westerly line of what is now plaintiff's land. Plaintiff acquired the upper lands, and two years later defendant purchased the lower banks, which in 1910 it attempted to improve by filling the adjacent flats from the sand and soil dredged from this creek, which it deepened and widened into a canal 900 feet long and 50 feet wide. From this greater width and sluggish current the canal does not readily scour, so that sediment is apt to be deposited and sandbars form, unless dredged out.

Had the original conditions at time of defendant's purchase continued unchanged, I think plaintiff had and could enforce the right of an upper riparian owner in this watercourse as entitled *ex jure naturæ* to the full flow and discharge without obstruction. It still had the characteristics of a watercourse, having source, outlet and channel. (Farnham Waters, § 459.) There was a natural right such as that of a riparian owner after a definite stream has been narrowed by embankments or walls (*Hartshorn* v. *Chaddock*, 135 N. Y. 116), or by an encroaching bridge or an insufficient culvert. (*Orvis* v. *Elmira, Cortland & N. R. R. Co.*, 17 App. Div. 187; affd., 172 N. Y. 656; *Cooper* v. *New York, L. & W. R. Co., Nos. 1 & 2*, 122 App. Div. 128; *Spink* v. *Corning*, 61 id. 84; affd., 172 N. Y. 626.) The artificial piping of the stream, I think, did not destroy or lessen plaintiff's right to have its flow maintained (*Washington County Water Co.* v. *Garver*, 91 Md. 398), especially as it is found as a fact that defendant had actual knowledge of this system of pipes at the time of its purchase. Even without any agreement or express assent, defendant would be bound not to interfere with such flow. (*Babbitt* v. *Safety Fund Nat. Bank*, 169 Mass. 361.)

In the subsequent negotiations during defendant's improvements, plaintiff did not waive these rights.

Hence I think defendant's duty does not come from the law of easements. But while any person, whether he be a

landowner or otherwise, may be enjoined from interfering with riparian rights, the defendant's liability here attaches to the opening and enlarging of this channel, with the connections made, which by its greater width reduces the force and effect of the current and perhaps subjects these broadened waters to increased tidal action, with a gradual deposit of sediment so as to require removal through dredging. I agree that this obligation should be declared and adjudged, but I am unable to find any authority for charging this burden on any specific part of defendant's bordering lands.

JENKS, P. J., MILLS and RICH, JJ., concurred.

Judgment modified in accordance with the opinion, and as modified affirmed, without costs, and with disbursements for printing the case equally divided between the parties. Order to be settled before Mr. Justice BLACKMAR.