Jacob J. Brown et al., Plaintiffs, *v.* Dennis W. Neely et al., Defendants.

Supreme Court, Westchester County, November 17, 1949.

*G. Michael Hanrahan* and *John F. Hyland* for plaintiffs.

*Gordon Miller* for defendants.

J. Addison Young, Official Referee. This action was brought to secure a judgment enjoining the defendants from interfering with the waters of a brook flowing through lands of other owners and the plaintiffs' and defendants' lands. Plaintiffs claim that the defendants destroyed an iron pipe which carried the waters of this brook, and that this breaking caused the water to back up and enter plaintiffs' cellar damaging the cement floor thereof and the foundations, and also damaging a garage on the property. In addition to injunctive relief plaintiffs claim damages for the injuries caused to their property.

The plaintiffs purchased their property in March, 1942. It consists of a plot of land fifty feet in width on the easterly side

of Sixth Avenue in North Pelham, New York, the property having a depth of about 100 feet. When purchased a residence had already been erected on said property. Defendants' property adjoins the property of the plaintiffs; it has a frontage of 150 feet on Sixth Avenue and a depth of about 100 feet. The northerly seventy-five feet of this property was purchased by the defendants in May, 1947, and the balance of the property was purchased by the defendants in September, 1948.

In the fall of 1948, the defendants commenced excavation for the purpose of erecting three houses on their property. These houses are now completed. The plaintiffs allege that a bulldozer used in excavating for these houses broke a ten-inch pipe, which pipe had been laid in 1938 by the then owner of the entire tract, for the purpose of containing waters of the brook which then flowed through several blocks of property and terminated on defendants' property where it entered the village sewer. It is alleged that the breaking of this pipe interfered with the flow of the brook through the pipe and as a result the water backed up and entered plaintiffs' cellar and the garage adjoining causing the damage claimed.

Upon the trial plaintiffs produced a witness by the name of De Feo who testified that in 1938 he laid the ten-inch pipe in the bed of the brook to contain the waters thereof, and that this pipe so laid in the brook was located where plaintiffs' property is and also the property of the defendants. This, of course, was before the houses were erected. This witness also testified that at that time there was a brook running there. After the pipe was laid in the bed of the brook it was covered up. Other witnesses were called to establish the fact that a brook existed at that time through the property.

Among these witnesses was one Frank T. James, the town engineer of the town of Pelham who had occupied that position for sixteen years. He was a graduate engineer of Harvard University. He testified that he had been familiar with the property in question for about eleven years and inspected the property in the year 1938 and the spring of 1939. He testified that the whole area, 200 feet by 100 feet was low and that there was a brook running through from the southern line of Mr. Brown's property to the corner of Sixth Avenue and Third Street. Mr. Brown's house was being constructed at this time by the Gilbert Construction Company and it was his duty to inspect the work. The brook ran across the rear part of the property now owned by Mr. Brown. He talked to the representative of the Gilbert Construction Company who was erecting the house. The founda-

tion of the house was laid over the channel of the brook and he was concerned as to how this brook was to be taken care of and he was assured by the representative of the construction company that it would be taken care of in some way. He testified that the brook starts approximately forty-five feet from the front line down the southerly line of Mr. Brown's property, runs across in a northeasterly direction and passes under the L of Mr. Brown's house in the rear and turns to the east and running northeasterly, and crosses the boundary line into Mr. Neely's property possibly forty-two feet from the front line of both properties and continues into the property of Mr. Neely. He testified that he had seen the pipe that was erected to take care of the brook and that it extended across both properties. At the time he inspected the property, he said, the waters in this brook were about two feet deep; the pipe that was used for containing the brook was the usual commercial pipe ten inches in diameter. This witness also testified that he had examined the property in January, 1949, after the time plaintiffs claim the pipe was broken and he found water coming up through the concrete floor of plaintiffs' house at various places, where it had pushed up through due to the pressure, apparently because the water could not flow out of the pipe. The pressure of the water in the ground was built up and it pushed through the floor of the house. On cross-examination this witness testified that the ten-inch pipe was about five feet six inches below the surface of the land.

In my opinion there can be no doubt of the existence of the brook, as testified to by the witnesses, and that this brook in 1938 was contained in a ten-inch pipe laid in the bed of the brook for that purpose, and carried the waters running in the brook out to the street in front of defendants' property. I am also satisfied that this pipe which had carried the waters of the brook since 1938 covered over by earth was broken by the defendants in excavating for the houses which they built in 1948. It is also plain enough that the defendants had notice of the existence of the brook upon the property at the time they purchased it. The deeds conveying the land to the defendants contained reservations that the land was conveyed subject to drainage and water courses. The Title Guarantee and Trust Company which examined the title to defendants' property at the time of the purchase specifically excepted from its policy of insurance " Rights to the natural flow of the brook which flows through the premises described in Schedule A and adjoining premises ". The defendant Neely admitted that he had discussed the water conditions existing there with the plaintiff and other persons. One or

more maps were introduced in evidence which indicated the existence of the brook in question.

As stated in the brief of counsel for the defendants, the position of the defendants has been throughout the trial that as soon as man interfered with the natural stream and placed the stream in a hidden artificial conduit then a different rule of law applies to determine the rights of the parties. Then the plaintiffs may or may not have an easement to maintain the pipes on defendants' premises depending upon the facts and that such right can only be acquired by express grant, implied grant or prescription.

The plaintiffs' claim is that they had the right to have the flow of water in this natural water course, although it was contained in a pipe, uninterrupted, and that if plaintiffs' property was damaged by reason of defendants' interference with the natural watercourse, they must respond in damages.

Apparently the main question, therefore, to be decided is whether the placing of the stream in an artificial conduit or pipe relieves the defendants from liability. Plaintiffs' counsel cites a number of cases which apparently hold to the contrary. In *Olney* v. *Culluloo Park Co.* (182 App. Div. 560, 564) Justice BLACKMAR writing for the court, stated as follows: '' The right of the owner to have the flow of the water uninterrupted from his land, although sometimes called an easement, is not strictly such but rather a natural right. (*Scriver* v. *Smith*, 100 N. Y. 471.) The existence of such right is so well established that it needs no further citation of authority. Rand, while he owned the lot including both parcels, filled in Bannister creek through a portion of its length and substituted therefor an underground pipe or drain. This did not change the character of the stream; it was still a watercourse although flowing through a pipe. Such was the situation when he sold the upper portion of the lot to plaintiff. The plaintiff had the natural right to have the water flow from his land, independently of any implication of a grant of an easement, because it still remained a watercourse. We think the plaintiff had the natural right to have this water flow from his land because Bannister creek was a watercourse, and that in so far as the drain was an artificial arrangement it may be said that he had an easement in its use.'' And at page 565: '' The stream being a watercourse, any obstruction thereto by the defendant, the effect of which was to back the water onto plaintiff's land, violated plaintiff's right based on the doctrine ' *Aqua currit et debet currere ut currere solebat.*' A portion of the stream was piped when plaintiff purchased. As to that, we

see no reason why the rule of the common law charging the dominant tenement with the cost of repair should not prevail. But the extension was built solely for the defendant's benefit. It had the right to pipe this stream provided it did not obstruct the flow to plaintiff's damage; but it must maintain the flow through the pipes as it would have existed through the open creek, or, to speak perhaps more accurately, it must see to it that piping the creek does not obstruct the flow to plaintiff's injury. The obligation rests on defendant, not because the drain as extended is a servitude on its land located by agreement with the owner of the dominant tenement, but because Bannister creek was a watercourse. (*Oliver* v. *New York Bay Cemetery Co.,* 38 N. J. Eq. 109.) ''

In this same case, Justice PUTNAM in an opinion stated (p. 567): '' The artificial piping of the stream, I think, did not destroy or lessen plaintiff's right to have its flow maintained (*Washington County Water Co.* v. *Garver,* 91 Md. 398), especially as it is found as a fact that defendant had actual knowledge of this system of pipes at the time of its purchase.'' *Kleinberg* v. *Ratett* (252 N. Y. 236) is also cited; also *Odell* v. *Nyack Water Works Co.* (91 Hun 283).

Defendants' counsel asserts that these cases sustain the defendants' position to the effect that because the water of the brook was contained in a pipe and covered up, and became invisible, the rule laid down in the cases mentioned does not apply thereto, and that there is no liability for the damage sustained by the plaintiffs on the part of the defendants. I have fully considered his argument in this respect and conclude that it is without merit.

Upon all the evidence I conclude that the defendants are liable for the damage sustained by the plaintiffs. The only evidence as to the amount of this damage was given by a witness called by the plaintiffs who estimated it in the amount of approximately $2,000. At the request of counsel and in their presence I have examined plaintiffs' premises and observed the condition of the cellar and foundation. Undoubtedly a new cement floor will have to be laid and some cracks in the foundation repaired. From my experience in such matters, I think the sum of $1,200 will be fair compensation to the plaintiffs for the damage sustained. Judgment is therefore granted in favor of the plaintiffs and against the defendants in that sum, with interest and costs. The question of injunctive relief will be decided after conferences with counsel. Settle judgment on five days' notice.