JOHN FROELICH, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

**Municipal corporations — when contractors, doing work for a municipality, are not servants or agents for whose negligence the municipality is liable.**

Independent contractors and their sub-contractors are not servants or agents of a municipality even when the latter reserves the right to change, supervise and inspect to the extent necessary to produce the result intended by the contract, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers which results in injury.

In relaying a water main in a city it was placed diagonally over a brick sewer. At this point a fracture was found in the main, the bursting of which caused a flood in plaintiff's apartment, damaging his house-

hold goods. *Held*, that none of the elements essential to the city's lia-
bility were established on the trial, but that a different case is established
against the contractor, and that the evidence viewed most favorably to
the plaintiff was sufficient to make the issue of his negligence a question
of fact for the jury, and to support the inference that the main was
relaid without the observance of any of the precautions usual in good
construction under similar conditions.

*Froelich* v. *City of New York*, 129 App. Div. 909, modified.

(Argued October 12, 1910; decided November 15, 1910.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
December 30, 1908, affirming a judgment in favor of defend-
ants entered upon a dismissal of the complaint by the court
at a Trial Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*John M. Gardner* and *Jonathan Deyo* for appellant.
Assuming that the record contained facts upon which defend-
ant, the City of New York, might advance its defense as set
forth in its answer, the plaintiff would still be entitled to go
to the jury upon the questions of fact raised. (*Adlin* v. *E.
B. Co.*, 129 App. Div. 713; *Nims* v. *City of Troy*, 59 N. Y.
500; *Bailey* v. *Mayor of City of New York*, 3 Hill, 531;
Dillon on Mun. Corp. [4th ed.] § 984; 1 S. & R. on Neg.
[5th ed.] §§ 258, 341; *McMahon* v. *Second Avenue*, 75 N.Y.
231; *Robinson* v. *Chamberlain*, 34 N. Y. 389; *Brooklyn*
v. *B. R. R. Co.*, 47 N. Y. 475; *Schumacher* v. *City of New
York*, 166 N. Y. 103.) The appellant is entitled to the most
favorable inference from the testimony, and if from such
inferences negligence can be drawn, a nonsuit is error. (*Vogel*
v. *Mayor, etc.*, 92 N. Y. 10; *Hart* v. *H. R. Bridge*, 80
N. Y. 622.)

*Archibald R. Watson*, Corporation Counsel (*Theodore
Connoly* and *Clarence L. Barber* of counsel), for City of
New York, respondent. The relaying of the water main was
incident to the rapid transit contract with McDonald. If

there was any negligence, it was that of an independent con-
tractor, and the city is not liable.   A right to supervise does
not change the rule.   (*Uppington* v. *City of New York*, 165
N. Y. 222;  *Vogel* v. *Mayor, etc.*, 92 N. Y. 10;  *Haeflin* v.
*McDonald*, 96 App. Div. 213;  *Morris* v. *I. S. Ry. Co.*, 100
App. Div. 295;  *Carpenter* v. *City of New York*, 115 App.
Div. 552;  *Mahoney* v. *City of Boston*, 171 Mass. 427.)

*S. B. Livingston* and *John H. Mulcahey* for William
Bradley, respondent.   The plaintiff failed to prove sufficient
facts as to the original construction of the main by the defend-
ant Bradley, upon which his theory of negligence was predi-
cated, to warrant a submission to the jury.   (*Morris* v. *Ry.
Co.*, 148 N. Y. 182;  *Ruppert* v. *R. R. Co.*, 154 N. Y. 93;
*Laidlaw* v. *Sage*, 158 N. Y. 73;  *Lopez* v. *Campbell*, 163
N. Y. 347.)

WERNER, J.   On the 19th day of February, 1904, the
plaintiff was the janitor of a building, in the basement of
which he occupied an apartment, near the intersection of Broad-
way and West 92nd street in the borough of Manhattan, New
York city.   Early in the morning of that day his domicile
was flooded by the bursting of a water main belonging to the
city, and his household goods were damaged.   Thereafter he
brought this action to recover his loss.   At Trial Term there
was a nonsuit, which was affirmed at the Appellate Division
by a divided court.

The few precedent circumstances which bear upon the acci-
dent are such as to leave the real cause in some doubt.   The
break in the water main occurred at the intersection of Broad-
way and West 91st street.   It appears that in 1903, while the
tunnel for one of the subways was in course of construc-
tion, it became necessary to change this water main so as to
carry it around one of the subway stations.   In relaying this
main it was placed diagonally over a brick sewer, and that is
the point at which the fracture was found which caused the
flood.   The plaintiff charges that both of the defendants
were guilty of culpable negligence; the city in knowingly

permitting the existence of a dangerous condition, and the contractor Bradley in creating it.

Since it clearly appears from the pleadings and from the uncontradicted evidence that the work of relaying this water main was done by the defendant Bradley as an independent sub-contractor under one McDonald, who was an independent contractor for the whole of the subway work, it is obvious that the nonsuit in favor of the city was properly granted. Such contractors and their sub-contractors are not servants or agents of a municipality even when the latter reserves " the right to change, supervise and inspect to the extent necessary to produce the result intended by the contract, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers which results in injury." None of the elements essential to the city's liability was established at the trial and the judgment of the Appellate Division in favor of the city must, therefore, be affirmed. (*Uppington* v. *City of New York*, 165 N. Y. 222.)

The record presents a different case against the defendant Bradley. Under familiar principles as to which there can be no divergence of views, he should be held liable if the accident can be definitely shown to have been caused by his negligence. The evidence given at the trial was meagre and, in some particulars, quite unsatisfactory to the judicial mind; but that is a question with which we have little concern. We have only to decide whether the evidence, viewed most favorably to the plaintiff, was of sufficient weight and probative force to make the issue of the defendant Bradley's alleged negligence a question of fact for the arbitrament of a jury. Upon that point we feel constrained to differ from the courts below. The trouble in the case consists, of course, in the dearth of proof as to the manner in which the water main was relaid before the accident. That is a circumstance regarding which it is probably much more difficult for the plaintiff to furnish evidence than it is for the defendant, although it should be added that the correctness of that surmise is of no

importance except in so far as it discloses the justice of giving the plaintiff the benefit of every reasonable inference by which the verbal and circumstantial evidence in his favor may be supported. If there was any negligence on the part of the defendant Bradley it must have consisted in his failure to relay the main in a proper and workmanlike manner. The learned courts below have thought that this feature of the case is so enshrouded in conjecture and doubt as to present no tangible fact upon which the defendant Bradley's alleged negligence could be predicated, and they have, therefore, decided as matter of law that no negligence was proved. We think the evidence was definite enough to raise an issue of fact which it was the duty of the court to send to the jury.

The testimony discloses that this water main was thirty-six inches in diameter. In changing its course so as to carry it around the subway station at 91st street, it became necessary to cross a large trunk sewer. The section which crossed the sewer was twelve feet in length, and it broke at or near the crown of the sewer. Expert witnesses testified that it would not be good construction to superimpose such a water main directly upon a sewer or other solid substance that does not extend along the whole length of the main ; that it is the custom, under such conditions, to leave an intervening filling of earth by way of allowance for uneven settlement or sagging ; that the degree of such allowance must depend upon the character of the earth and the extent to which it may have been disturbed in digging ; that it would vary from two inches in virgin soil to six inches in earth that had been excavated but not thoroughly tamped ; that the failure to observe these precautions would cause a sagging of the superimposed pipe or main where it rests upon the earth, thus creating a strain upon that portion resting upon an unyielding base, with a resulting tendency to fracture at the point where the main rests upon a solid bed. It was further shown that when such a condition exists it is usual to support the ends of the water main by means of wooden bed blocks which are designed to minimize the danger of uneven settlement of the earth.

There is testimony in this record from which a jury might draw the inference that this water main was relaid without the observance of any of the precautions which are usual in good construction under similar conditions. A witness named Bourci, who lived in the house adjoining the place where the break in the main was found, gave testimony from which the jury could have concluded that the bottom of the main was laid directly upon the top of the sewer. It is true that the cross-examination of this witness brought to light a number of circumstances which were well calculated to impeach the correctness of his observations or the credibility of his statements, but that was a matter for the jury. Another witness, Hoyne, testified that he was called to repair the break in the main; that in excavating for that purpose the broken part of the main was found resting on the top of the sewer; that the main on both sides of the sewer had sagged; and that it was necessary to pry off about two inches from the top of the sewer in order to make a proper resting place for the main. Although there is a manifest inconsistency between the statement of this witness to the effect that the main rested upon the sewer, and his other statement that there was a wooden wedge between the main and the sewer, that also presented a discrepancy for the consideration of the jury, since neither statement is distinctly antagonistic to the plaintiff's theory of the defendant Bradley's alleged negligence. Another witness, Keller, testified that he was a member of Hoyne's repair gang and that the main was found resting on the crown of the sewer and broken at that point across the top. On Hoyne's cross-examination he testified that he found a bed block under one end of the main but did not examine the other end, and he also stated that the ground looked as though it had been filled in considerably.

Counsel for Bradley argued very forcefully that the discovery of the wedge between the sewer and the main is no more evidence of the defendant Bradley's negligence than the statement of witnesses tending to show that the main, when uncovered after the flood, was resting directly upon the

crown of the sewer; and that none of the discoveries made after the accident can be regarded as reliable evidence of the conditions which ante-dated the accident. This very cogent argument will be proper and perhaps effective before a jury, but it cannot be permitted to influence our decision, for it deals wholly with questions of fact. The case is very near the border line between fact and law. Under the rule which entitles the plaintiff to all of the most favorable inferences which are fairly deducible from the testimony given in his behalf, we incline to the view that the plaintiff had the right to have his case against Bradley submitted to the jury.

For the foregoing reasons the judgment of the courts below is affirmed, with costs, in favor of the city against the plaintiff, reversed as between the defendant Bradley and the plaintiff, and a new trial ordered as against the defendant Bradley, with costs to abide the event.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment accordingly.