MAPSON F. HAYLING, JR., by MARY M. HARRIS, Guardian ad Litem, Appellant, *v.* THE CITY OF NEW YORK and Another, Respondents. MARY M. HARRIS, Appellant, *v.* THE CITY OF NEW YORK and Another, Respondents.

First Department, November 27, 1931.

*Robert L. Finley* of counsel [*Robert M. Benjamin* with him on the brief; *Parker & Garrison*, attorneys], for the appellants.

*Henry J. Shields* of counsel [*Edward A. Gobel* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondent The City of New York.

*James I. Cuff* of counsel [*Harold V. Angevine* with him on the brief], for the respondent Oakdale Contracting Company.

MARTIN, J. On the 5th day of March, 1929, two actions were commenced, one by the infant plaintiff, Mapson F. Hayling, Jr., through his guardian *ad litem*, to recover damages for personal injuries sustained, and the other by Mary M. Harris, his mother, for loss of services. The accident out of which these actions arose occurred at about five o'clock in the afternoon on November

6, 1928, on Washington place between Sixth avenue and Barrow street, borough of Manhattan, city of New York.

The city of New York conceded in the pleadings and upon the trial that the defendant Oakdale Contracting Company at the time of the accident and for some time prior thereto was engaged, pursuant to a contract with the city, in constructing a section of the subway under Sixth avenue, including its intersection with Washington place. Both defendants admitted on the trial that materials for subway construction, including steel beams, were stored in the roadway of Washington place near Sixth avenue in pursuance of a permit issued by the board of transportation. Part of the materials so placed consisted of two large and one small pile of beams. The two large piles rested in the street, adjacent to and parallel with the northerly curb, and each consisted of eight beams, being two beams wide and piled four beams high.

Directly south of one of the two large piles of beams and nearer the center of the street was a small pile consisting of two beams, placed one upon the other about a foot and a half to two feet from the adjoining large pile. It was the upper of the two beams in this small pile which fell upon and crushed the left leg of the infant plaintiff.

At the time of the accident the infant plaintiff, who resided at No. 110 Washington place, was playing on the street with several boys. For about a half hour prior to the happening of the accident, at five P. M., the plaintiff and a boy named Georgie Costello had been playing " over by the beams." They had placed sticks across the gap between the ends of the two large piles preliminary to playing the game of hide and seek.

Immediately prior to the accident, the infant plaintiff, who had not been on top of or gone near the small pile of beams, walked around in front of it; whereupon the upper of the two beams fell upon his left leg throwing him to the ground. The beam landed with the sharp edges down, so that the flanges were vertical to the pavement. His foot was caught at a point toward the easterly end of the beam. Although it appears that this beam was pushed over by a small boy who was playing with plaintiff, it was so heavy that three men who arrived after the accident found it impossible to lift the beam. The witnesses testified that it took five to seven men to finally remove the beam and release the boy's leg.

It is the contention of the plaintiffs that the defendant Oakdale Contracting Company negligently piled these beams in the street, and that the city supervised the placing of these particular beams, inspected them after they had been placed and knew of their dangerous position.

The beams of the adjoining large pile rested securely on two

sticks placed between the pavement and the bottom of the lowest beams of that pile. These two sticks were at right angles to the pile itself and projected out from under it toward the center of the street. The stick near the easterly end of the pile was a two-by-four and projected out from the pile about three feet. The stick at the westerly end of the pile was smaller and projected but twelve or eighteen inches from it and was "sort of chewed off at the end."

After the beam fell upon the boy, both beams in the small pile lay on their sides, the flanges vertical to the pavement. The innermost beam of these beams, which undoubtedly was the bottom one in the pile, was parallel to the curb; its easterly end lay on the edge of the two-by-four projecting from the adjoining large pile and its westerly end was just off the small stick projecting from under the large pile.

The outer or second beam, which was the one that struck the child, was undoubtedly the top beam in the pile and it lay on an angle to the inner beam. At the westerly end the beams were but six inches apart while at the easterly end there was a distance of from two and a half to three feet between them.

Dr. Walter V. Bingham, who examined the beams immediately after the accident, testified in behalf of the plaintiff as follows: "Q. How far south of the two-by-four was the nearest beam in the street? A. The one lying flat and nearest to the pile. One end of it was on the two-by-four at the south end, the other end was just off from the stick at the other end of the pile. Q. How far to the south of that beam was the next beam? A. The next one was at an angle like that, about two or three feet farther out in the street and somewhat at an angle. That is the one had the blood on it."

From the evidence it is clear that the jury might have found that prior to the accident the two beams were insecurely placed and in a dangerous position; that they were three feet high with a base of only ten inches, and were not laterally supported; that while the easterly end rested on the two-by-four projecting from the large pile, its westerly end rested either on the pavement, or partly but not squarely on the smaller stick which projected twelve to eighteen inches from the other end of the large pile of beams.

The infant plaintiff testified that the beams had been in the street for several days; that he had played on the two large piles for about half an hour on the day of the accident, but that no one told him to stay off or chased him away and he did not see a watchman.

In view of the fact that the beams were lawfully placed in the

street during the construction of the city subway, the city of New York cannot be charged with negligence except in the event of actual or constructive notice of the fact that the beams were negligently placed or were in a dangerous condition.

In *Hunt* v. *Mayor, etc., of New York* (109 N. Y. 134) the court said : " The duty cast upon a municipal corporation to keep its streets in a safe condition for travel is not absolute, so as to impose liability upon the corporation in every case where a traveler, without fault on his part, sustains injury from a defective street. Its liability depends in all cases upon negligence, that is, upon the fact whether it has omitted to exercise due care, under the circumstances, in their maintenance or reparation. The mere existence of a defect from which a traveler sustains injury, does not, independently of negligence, establish a culpable breach of duty on the part of a municipality."

In the case of *Schmidt* v. *City of New York* (179 App. Div. 667; affd., 228 N. Y. 572) this court said: " The mere happening of the accident does not establish the liability of either defendant, for neither is an insurer of the safety of persons passing over the planked street. Before either can be held responsible for the undoubtedly defective condition of the plank which broke, notice either actual or constructive must be brought home to it that the plank was defective. This is a well-established rule as to the municipality, and is a rule which has frequently been applied in cases like the present to a contractor engaged in work similar to that upon which the contracting company was engaged. Of actual notice to either appellant there is no evidence, so that the sole question left in the case is whether or not either is chargeable with constructive notice. Such notice will generally be found where the defect is visible and apparent, and has been in that condition so long that the city or the contractor is presumed to have seen it, or to have been negligent in failing to see it."

The case of *Sweinhart* v. *City of New York* (226 App. Div. 328; affd., 252 N. Y. 604) is to the same effect.

In the present case there was no proof of notice of any kind to the city of New York that the pile was in a dangerous condition. If from the facts in this case the jury found that the beams were negligently piled, that negligence would be chargeable to the contractor and not to the city. In a similar case (*Froelich* v. *City of New York*, 199 N. Y. 466) the Court of Appeals affirmed the judgment dismissing the complaint as to the city but ordered a new trial of the plaintiff's action against the contractor. The opinion, in part, is as follows: " Such contractors and their subcontractors are not servants or agents of a municipality even when

the latter reserves ' the right to change, supervise and inspect to the extent necessary to produce the result intended by the contract, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers which results in injury.' None of the elements essential to the city's liability was established at the trial and the judgment of the Appellate Division in favor of the city must, therefore, be affirmed. ( *Uppington* v. *City of New York*, 165 N. Y. 222.)

" The record presents a different case against the defendant Bradley. Under familiar principles as to which there can be no divergence of views, he should be held liable if the accident can be definitely shown to have been caused by his negligence."

We are of the opinion that the testimony in this case presents a question for the jury, particularly in view of the fact that this heavy beam, which required five or six men to lift, fell at the touch of a boy's hand. There is no proof of any negligence on the part of the city and the judgments dismissing the complaints as to it should be affirmed, with costs. The judgments should be reversed as to the defendant Oakdale Contracting Company, the actions severed and a new trial ordered, with costs to the appellants to abide the event.

FINCH, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

In each case: Judgment affirmed as to the defendant The City of New York, with costs to said respondent. Judgment as to the defendant Oakdale Contracting Company reversed, the action severed and a new trial granted, with costs to the appellant against said defendant to abide the event.