DEPARTMENT OF WELFARE OF THE CITY OF NEW YORK, Petitioner, v. PETER HALECKY, Respondent.

Domestic Relations Court of the City of New York, Family Court, Bronx County, September 30, 1948.

*Laura Kane* for petitioner.

*David S. Goodzeit* for respondent.

LORENCE, J. On June 14, 1948, the department of welfare of the city of New York, by its duly authorized agent, filed a petition in this court alleging that John Halecky, born March 18, 1934, was on or about November 24, 1947, duly remanded by the Children's Division of this court to the care and custody of Mission of the Immaculate Virgin, located at Staten Island, New York; that the respondent herein is the father of the child and is charged by law with the responsibility for the maintenance and support of the child, and that he has failed to support the child although sufficiently able to do so. In the prayer for relief the petitioner requests, in accordance with chapter 482 of the Laws of 1933, as amended by chapter 671 of the Laws of 1940 (N. Y. City Dom. Rel. Ct. Act, § 56-a, as amd.), that process be issued requiring the said Peter Halecky to appear before this court and to be examined as to his ability to contribute in whole or in part toward the support of the child while in the care of such institution.

The respondent appeared by counsel on July 25, 1948, and thereafter the matter was adjourned by consent to August 26, 1948, at which time a hearing was held. The department of

welfare claimed the sum of $328.50 for the care and maintenance of the child at $10.50 per week from November 24, 1947, to June 30, 1948, the latter date being the one on which the child was discharged to the father by the Children's Court Division. It further appeared that the father earns $51.35 a week and is supporting his present wife to whom he was married after being divorced by his first wife, the mother of John Halecky, the child involved in this proceeding. He is also contributing $12 weekly for the support of another child of his first marriage.

The question is presented here whether the parent of a child heretofore committed to an institution by an order of this court may be compelled, pursuant to section 56-a of the Domestic Relations Court Act, to make reimbursement in whole or in part to the department of welfare of the city of New York, retroactively to the date of the commitment or merely prospectively from the date of the application of the welfare department for such reimbursement.

There is no reported decision construing section 56-a of the Domestic Relations Court Act.

The cited statute (subd. 1) authorizes a proceeding in this court to direct a parent "to contribute in whole or in part to the expense incurred by the city of New York on account of the maintenance of such child." The word "incurred" denotes the past tense. (*Matter of McElheny*, 91 App. Div. 131, 138–139; 42 C. J. S., p. 553). "The word 'incurred' being in the past tense, when used without other words to modify its meaning, would in strictness relate exclusively to past transactions." (*Agawam Bank* v. *Strever*, 18 N. Y. 502, 509.)

This section appears to grant an expeditious remedy to the welfare department in addition to the more cumbersome remedy of bringing a civil action in another court to enforce the substantive provisions of section 104 of the Social Welfare Law. This latter statute creates a statutory liability of the parent to the welfare department by the use of the following language: "A public welfare official may bring action against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care. Any public assistance or care received by such person shall constitute an implied contract."

There is no mistaking the liability of a parent for past assistance furnished under the text of this latter statute. The two statutes should, of course, be read together. (Cf. *Tolley* v. *Maliswaski,* 159 Misc. 89; *Matter of Lombardi,* 39 N. Y. S. 2d 62.) As PERSONIUS, J., stated in *Tolley* v. *Maliswaski* (*supra,* p. 91) : "At common law and under section 57 of the Poor Law (repealed by chapter 565 of the Laws of 1929, which enacted the Public Welfare Law) it seems to have been held that before a municipality which had furnished relief could recover, it must appear that the relief had been expressly requested or that some fraud or concealment had been practiced upon the welfare officers. (*City of Albany* v. *McNamara,* 117 N. Y. 168; *Matter of Carroll,* 55 Misc. 496; *Matter of Humphries,* 125 id. 62, 64; *Matter of Thomas,* 132 id. 842.) These cases seem to require concealment, fraud or express request as the basis for an implied contract to repay, but section 128 of the Welfare Law [now section 104 of the Social Welfare Law] provides that ' any public relief received * * * shall constitute an implied contract.' These cases are, therefore, no longer controlling."

The city or State should be reimbursed for prior outlays made for the support of a former indigent person. (*Matter of Beaman,* 171 Misc. 578.)

In view of the existence of an implied contract on the part of the parent (Social Welfare Law, § 104) to reimburse the welfare department, no prior order or determination is necessary to give rise to the liability. The situation is analogous to the numerous reported cases directing persons to reimburse the Department of Mental Hygiene, in whole or in part, for the care of incompetent relatives. No prospective adjudication of liability is necessary in such cases. (*Matter of Fox,* 250 App. Div. 31, 36, affd. 275 N. Y. 604; *Matter of Bauer* [*Byrne*], 266 App. Div. 816, affd. 291 N. Y. 711.)

The situation is not analogous to applications for temporary alimony in matrimonial actions where the award cannot be made effective prior to the date of application. (*Kulikov* v. *Kulikov,* 254 App. Div. 741.) The reason for that rule appears to be that the court should limit its aid to a wife to the period of the pendency of the action so that, for example, it will not grant a counsel fee for legal services rendered at a prior time. (*Thrall* v. *Thrall,* 83 Hun 188; *McCarthy* v. *McCarthy,* 137 N. Y. 500.)

The present application of the welfare department which is only secondarily liable, against the parent, who is primarily liable for the support of his child, is on an entirely different

basis, resting under the language of section 104 of the Social Welfare Law, upon an implied contract by the parent to the extent of his property to reimburse the department for its advances. The liability under section 56-a of the Domestic Relations Court Act likewise rests upon quasi contract.

To hold otherwise would result in unnecessary multiplicity of actions, as the department would be compelled to sue in a court of general jurisdiction for past contributions after proceeding in this court for future contributions.

The application by the welfare department to compel the parent to contribute to the maintenance of the child from the date of the latter's commitment to the institution is granted. It is immaterial that the child was discharged from the institution during the pendency of the proceeding. My holding would be the same even if the petition had been filed subsequent to the date of the child's discharge from the institution.

The respondent is ordered to pay $328.50 to the petitioner at the rate of $2 per week commencing September 9, 1948.