GENERAL ICE CREAM CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28191.)

Court of Claims, June 29, 1950.

*C. Addison Keeler* and *Prescott D. Perkins* for claimant.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* and *Robert J. Cooney, Jr.,* of counsel), for defendant.

SYLVESTER, J. This claim is to recover damages for the appropriation by the State of New York of certain property in accordance with the provisions of sections 1–10 inclusive, of chapter 862 of the Laws of 1936 as amended. Claimant's property, located on Noyes Island in the city of Binghamton, fronted on Water Street on the east and was bounded by the Chenango River on the west.

In 1941, the State appropriated a permanent easement in an area comprising 9,749 square feet (Parcel No. 364) to the west of claimant's ice cream plant and a temporary easement, from July 1, 1941 through June 30, 1944, in areas comprising 7,080 square feet (Parcel No. 365) and 1,006 square feet (Parcel No. 366) to the west and south of the building. Of the area in which a permanent easement was taken, approximately two thirds consisted of river bank and underwater land. The State also condemned a concrete and frame building situated on the southwesterly portion of claimant's lands.

The taking was part of a flood control project of the Federal Government, initiated pursuant to the provisions of Flood Control Act of June 22, 1936 (U. S. Code, tit. 33, § 701-a *et seq.*) and designed to accommodate floods in the Chenango and Susquehanna Rivers greater than those of 1935 and 1936. This, in turn, was part of a comprehensive plan for the protection of southern New York. The State of New York participated in this project only to the extent of appropriating the land, pursuant to chapter 862 of the Laws of 1936, and acts amendatory thereof. The Federal Government designed the project, including the flood wall built along the westerly part of claimant's property, and contracted for its construction with a private firm.

Claimant's land, prior to the taking, was approximately 31,000 square feet in area. Upon it was located its buildings occupying 11,500 square feet. Before appropriation, its value was $68,500. After parcels No. 364 and No. 366 were taken, the value of the remainder (consisting of 20,250 square feet) and the building (ice cream plant) was $58,000, allowing for consequential damage because of reduction in area and the size and shape of the plot remaining, leaving a difference or damage in the sum of $10,500. In appraising the consequential damages, consideration has been given to the benefits resulting to the claimant's land by reason of the improvement resulting from the flood control wall and the enhancement in value to claimant's lands thereby. (*Matter of City of New York [Exterior St.]*, 285 N. Y. 455, 461; *Bohm* v. *Metropolitan El. Ry. Co.*, 129 N. Y. 576, 591; *Newman* v. *Metropolitan El. Ry. Co.*, 118 N. Y. 618, 628; *Diehl* v. *State of New York*, 51 N. Y. S. 2d 333, 334; *Brewer-Tichenor Corp.* v. *State of New York*, Claim No. 27823, unreported, [BARRETT, P. J.]; *Bacorn* v. *State of New York*, Claim No. 27959, unreported [LAMBIASE, J.]; 29 C. J. S., Eminent Domain, § 179.)

Likewise, in ascertaining the consequential damage to the remainder, the court has borne in mind the diminished territory remaining and its limitations. As bearing upon its market value, the owner offered evidence as to its limited use by reason of the inaccessibility to portions thereof, the inadequate expansion facilities, and the like. An owner of land is not limited in compensation to the use which he actually makes of it, but may show the best available use or factors which might tend to enhance the market value of the property before the severance. (*Graham* v. *State of New York*, 51 N. Y. S. 2d 437; Orgel on Valuation Under the Law of Eminent Domain, § 28 *et seq.*)

In determining the amount of compensation to be awarded for the taking of the permanent easement (Parcel No. 364), the court has fixed a nominal value of claimant's fee after the severance. Its title, burdened as it is with a permanent easement, " is a naked, unproductive fee, useless, bereft of enjoyment and incapable of pecuniary advantage ". (*Cossey* v. *State of New York*, 43 N. Y. S. 2d 908, 909, citing: *Matter of City of New York [Braddock Ave.]*, 278 N. Y. 163; *Matter of City of New York [43rd Ave.]*, 282 N. Y. 42; and *Matter of City of New York [Decatur St.]*, 196 N. Y. 286. See, also, *Dillenbeck* v. *State of New York*, 193 Misc. 542.)

While the taking of parcel No. 366, bordering the river, is expressed as a temporary easement, it is for all practical purposes established as a permanent one and devoid of any benefit or use, segregated as it is from the surrounding land by a high concrete (flood) wall. The owner, being excluded from its possession and denied the rights and benefits thereof to which he was entitled ad infinitum, is entitled to recover as and for a permanent taking. (*American Woolen Co.* v. *State of New York,* 195 App. Div. 698.) " Governmental action short of acquisition of title or occupancy has. been held, if its effects are so complete as to deprive the owner of all or most of his interest " in the subject matter, to amount to a taking." (ROBERTS, J., in *United States* v. *General Motors Corp.,* 323 U. S. 373, 378.) The damage to the concrete and frame building, concededly in the sum of $1,500, is included in the foregoing computation of damage.

In arriving at the value of the temporary easement (Parcel No. 365), it is determined that the measure of compensation is the fair and reasonable rental value of the property during the easement period. (*United States* v. *General Motors Corp., supra;* *Spencer* v. *State of New York,* 206 App. Div. 376; *Graham* v. *State of New York, supra.*) Claimant, however, seeks to recover in addition, certain items of cost of removal of personalty and moveable fixtures, etc., occasioned by the temporary taking. " Some of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant. That cost would include labor, materials, and transportation. And it might also include the storage of goods against their sale or the cost of their return to the leased premises. Such items may be proved, not as independent items of damage but to aid in the determination ·of what would be the usual — the market — price which would be asked and paid for such temporary occupancy of the building then in use under a long-term lease. * * * Proof of such costs as affecting market value is to be distinguished from proof of value peculiar to the respondent, or the value of good-will or of injury to the business of the respondent which, in this case, as in the case of the condemnation of a fee, must be excluded from the reckoning." (*United States* v. *General Motors Corp.,* 323 U. S. 373, 383, *supra.*) Such rental value is fixed

at the sum of $5,100 for the easement period. With regard to the cost of removal of a trade fixture (gas tank, but not gas pumps) an allowance is made in the sum of $150. (*United States v. General Motors Corp., supra*; *Jackson v. State of New York*, 213 N. Y. 34; *Matter of City of New York [Whitlock Ave.]*, 278 N. Y. 276; *Matter of City of New York [Allen St.]*, 256 N. Y. 236.) Damage to the pavement of the roadway is likewise allowed in the sum of $2,530.92.

Claimant also seeks to recover certain physical damages sustained to its building by reason of the negligent manner in which the construction work was performed. The work on the wall, including the excavation of a ditch, was performed by a contractor of the Federal Government and over whom the State had neither control nor supervision. The damage to the building, occasioned by the contractor's failure to provide proper lateral support to or shoring of claimant's building was not a consequence of the work itself and inherently dangerous. The rule of liability was aptly stated by former Presiding Judge BARRETT, of this court in *Midolla v. State of New York* (46 N. Y. S. 2d 345, 347–348): " Since the law in existence at the time of the enactment of Chapter 862 of the Laws of 1936 did not so provide, it is my opinion that there can be no recovery for damages to the building caused solely by the negligence of the contractor. The work was done by an independent contractor under a contract with the United States. So far as appears, the state was not a party to the contract and had no control or supervision over the work. The state's duty was to appropriate the necessary easements and it is not responsible for the negligence of a contractor over whom it had no control or supervision. Lewis v. New York & H. R. Co., 162 N. Y. 202, 56 N. E. 540. Even though the state were a party to the contract, it could not be held liable where damages are caused solely by the negligence of the contractor and without authorization and direction of the state. Ketcham v. Newman, 141 N. Y. 205, 36 N. E. 197, 24 L. R. A. 102; Dunn v. Empire Engineering Corp., 147 App. Div. 237, 131 N. Y. S. 935; affirmed 210 N. Y. 599, 104 N. E. 1129; Froelich v. City of New York, 199 N. Y. 466, 93 N. E. 79. There seems, however, to be an exception to this general rule in that where the work is inherently dangerous, the principal may be held responsible though the damage was caused by an independent contractor. Besner v. Central Trust Co. of New York, 230 N. Y. 357, 130 N. E. 577, 23 A. L. R. 1081; Boylhart v. DiMarco & Reimann, Inc.,

270 N. Y. 217, 200 N. E. 793. There is, however, no claim here that the work was inherently dangerous.'' Accordingly, such portion of the claim is disallowed. Moreover, it further appears that the claim, predicated in negligence, has not been timely filed.

An award in the sum of $18,280.92, with appropriate interest, is made in the accompanying findings.