CENTRAL NEW YORK BROADCASTING CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31163.)

Court of Claims, July 6, 1954.

*James E. Wilbur* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

MAJOR, J. This claim was filed by the Central New York Broadcasting Corporation, owner and operator of Radio Station WSYR, to recover damages sustained by reason of the alleged negligence of the State of New York which resulted in the erosion of its lands by a flood, which occurred on March 28, 1950.

A flood control project was undertaken by an arrangement between the State of New York and the United States Government, as authorized by chapter 862 of the Laws of 1936, as amended, and by Act of Congress approved August 18, 1941 (U. S. Code, tit 33, § 701 *et seq.*), referred to as 1941 Flood Control Act. Among the stipulations contained in the "Assurances by the State of New York, pursuant to Act of Congress approved August 18, 1941, Public No. 228", signed by Charles H. Sells, Superintendent of Public Works of the State of New York, and sealed with the great seal of the State on October 27, 1943, the State agreed: (a) to provide all lands, easements and rights of way, etc.; (b) that the State will save harmless and protect the United States of America, its officers and agents from any and all claims for damage and from all liabilities; and (c) that the State will maintain and operate without expense to the United States, all of the works after completion in accordance with regulations prescribed by the Secretary of War.

Work on this project started in 1949, by a third party under a contract with the Federal Government, and was carried on in accordance with a map and plans made by the corps of engineers of the War Department of the United States Government, and approved by a district engineer of the Department of Public Works of the State of New York. This flood control project was a joint venture. (*Miller* v. *State of New York,* 199 Misc. 237, 241.)

Up to the time of the suspension of activities and work around December 15, 1949, for the winter of 1949-1950, the original channel of the creek had been altered by the construction of a new channel, which commenced at Ballantyne Road and proceeded southerly to a point just a few hundred feet north of Seneca Turnpike. The work then resumed at a point some hundred feet south of Seneca Turnpike, and the digging proceeded southerly. The new channel connected with the old channel at Ballantyne Road, and the construction arrangement at this point placed a bottleneck in the old channel, which reduced the area of its opening into the new channel, and reduced the carrying capacity of the old channel. At the time of the cessation of activities, some work had also been done south of Seneca Turnpike, but did not reach as far as Trainor Avenue. The new channel in this location followed the route of an old millrace, which went across and cut through the loops and meanders of the old channel. As this was done, arrangements were made to divert the old channel at various points to carry the water past the work. This new channel was not in operation at the time of the flood in the spring of 1950. Seneca Turnpike formed a barrier across the channel.

In years prior to the spring of 1950, the property owned by claimant had been covered by flood waters during the spring thawing season, but the accumulated waters receded slowly without doing any damage.

About March 24, 1950, the weather became warm and caused snow on the hills to melt. Rain, added to the heavy run off from the hills, produced a flood condition in the area of the project.

The newly constructed dam restricted this run off, but did not sufficiently limit the flow to the capacity of the old channel as restricted. This resulted in the overflow water covering an area of the claimant's property. Defective plans and construction brought about a series of events, starting with the waters cutting a new opening through Seneca Turnpike and gaining access to the new channel, causing the impounded waters, described as a small lake, to recede rapidly and drop into the new channel at the northern edge of claimant's property. The water acquired a high velocity as it dropped from the higher to the lower level of the new channel, washing out and eroding claimant's property to a considerable depth in places.

The promoters of this project, in attempting to control or eliminate floods in this territory, are chargeable with knowledge of previous flood conditions during other spring seasons, and

they knew or should have known that if the old unrestricted channel lacked the capacity to care for the flood waters of previous years, then it would definitely have a lesser capacity when restricted. The construction of, and the method used for, the outlet was defective, insufficient and improper to reasonably and safely accomplish its purpose.

Water is a natural element having commonly known definite characteristics affixed by our Creator. God's natural laws are unchangeable. Attempts at their modification and control are hazardous. In the matter before the court, it was not only hazardous, but inherently dangerous. The State, as one of the principals in this venture, is liable for legal damages where it owns the land used for the project, the plans of construction are defective, and the work is inherently dangerous. (*General Ice Cream Corp.* v. *State of New York,* 199 Misc. 620; *Miller* v. *State of New York, supra,* p. 242; *Midolla* v. *State of New York,* 46 N. Y. S. 2d 345, 347; *Brown* v. *Neely,* 197 Misc. 173, affd. 277 App. Div. 1126; *Zidel* v. *State of New York,* 193 Misc. 91; *Wolcott* v. *State of New York,* 199 Misc. 229.)

The State's responsibility in this project cannot be delegated.

At the opening of the trial, it was stipulated that the claimant was the owner of the land on which damage was inflicted; that the State owned certain easements over such property used for the construction of the channel alleged to be a cause of the flood; and that the amount of damage, if any is found, is the sum of $3,137.81.

The claimant is, therefore, entitled to an award in the sum of $3,137.81.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.