Charles Lambíase, J.
This claim has been filed to recover damages sustained through the alleged negligence of the State of New York “ in the planning, approval and execution of the Oonklin-Kirkwood Flood Protection Project, North Branch — Susquehanna River.” (Claim, par. 2) which, it is alleged, resulted in the destruction of “ a retaining wall along the river bank of claimants’ property and eroded and carried away large portions of claimants’ real property along said unprotected river bank.” (Claim, par. 9).
The State denies the said allegations and more particularly asserts that damage, if any, was caused to claimants’ property prior to the date when the afore-mentioned flood protection project was begun.
The claim of the claimants herein has been duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination, the original and 12 copies of the claim having been filed in the office of the clerk of this court on July 9, 1956, and a copy of the claim having-been served on the Attorney-General of the State of New York on the same day.
It is alleged in the claim that “ Since June 17, 1947, claimants have been and still are the owners in fee of the following-described premises:
All that tract or parcel op land, situate in the Town of Kirkwood, Comity of Broome and State of New York, bounded and described as follows:
Commencing at a point in the center line of the highway leading from Kirkwood to Great Bend 215%' southerly from the John B. Hayes’ south line, being the north line of the Van Winkle farm and running thence south 4° 20' east in the center of said highway 219' to a point; thence south 85° 40' west at right angles to the center of said highway 83' more or less to low water mark in the Susquehanna River; thence down the river at low water mark 237' more or less to a point in a line drawn at right angles to the center line of said highway from the place of beginning; thence north 85° 40' east 171' more or less to the place of beginning, according to a survey made on February 3rd, 1912, by S. M. Baird, C.E.”
Located upon the premises at all times mentioned herein there was a dwelling, a tool house, and a two-car garage, the last mentioned being in poor condition and being considered of no market value.
*418 It would appear that ownership of the premises described in the claim has not been questioned by the State, although compliance with rule 28 of the Buies of the Court of Claims has not been specifically waived. Claimants and the State of New York have respectively submitted the following proposed finding of fact: “ 1. Claimants are the owners in fee of the premises described in the claim, having purchased the premises in June, 1947.” (Claimants’ proposed Finding No. 1; State’s Proposed Finding No. 1.).
The conclusory evidence in the record on the question of ownership by claimants of the property involved in this claim and of the extent and quantity leaves much to be desired. Upon the record and specifically upon the mutually proposed finding of ownership and description of the property involved, we have marked the proposed Finding No. 1 “ found ”, and we pass now to the other issues.
The Flood Control Act of 1936 (U. S. Code, tit. 33, ch. 15) authorizes the Federal Government to construct flood control projects in various areas throughout the nation. Improvements of waterways for flood control purposes are placed under the general jurisdiction of the United States A rmy and under the immediate supervision of the chief of engineers (§ 701b). And it is provided by section 701c of said title, among other things, that ‘ ‘ After June 22, 1936 no money s ppropriated under authority of section 701f of this title shall be expended on the construction of any project until States, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of the Army that they will (a) provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, except as otherwise provided herein; (b) hold and save the United States free from damages due to the construction works; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of Army: ”.
In 1936 the Legislature of the State of New York authorized participation by the State of New York in Federal programs of flood control projects (L. 1936, ch. 862, as amd.). The Superintendent of Public Works was directed to acquire by appropriation any property or interest therein necessary for such project (§ 7, subd. 1), and he was required to maintain the same after it was completed and formally turned over by the Federal Government to the State of New York. The flood protection project above mentioned was undertaken by an arrangement between the State of New York and the United States Government,
*419 The foregoing indicates the legal framework underlying Federal-State co-operation in the control of floods in this State; and so far as concerns the afore-mentioned Conklin-Kirkwood Flood Protection Project, the State of New York, through its Superintendent of Public Works, on the 22nd day of December, 1954, executed to the United States Government and delivered to it the “Assurance” (Exhibit 9) required by the Federal Flood Control Act. Work on said project was beg-un in May of 1955 and was completed in September of 1955 by a contractor engaged by the United States Government.
It was stipulated upon the trial (S. M. 72) that there was filed in the office of the Secretary of the State of New York a description and a map of the project on the 14th day of June, 1955 (Exhibit 12). It does not appear that a copy of said description and of said map was served upon claimants as required for a statutory taking (L. 1936, ch. 862, as amd., § 7, subd. 7), or that a copy of said description and map was filed in the office of the county clerk pursuant to subdivision 4-a of said section.
The State of New York admits that it entered upon and occupied claimants’ lands involved in the project, such occupancy being on a temporary basis during the construction of the flood control project. (State’s Proposed Finding of Fact No. 4.) And in claimants’ Exhibit 3, being a letter from the New York State Department of Public Works to claimants, there appears with reference to said project, among other things, the following: “ The work proposed will consist of removal of accumulated snags and other debris which have formed over a number of years. It may be necessary, from time to time, to enter upon your property and occupy it temporarily for such purposes.”
There is a statement in the record by claimants’ counsel that the permanent easement in Exhibit 12 described, insofar as it afEects claimants’ property, was taken (S. M. 65). Upon the record, however, there is no proof of the fact and, therefore, we cannot and do not find that a permanent appropriation of the easement described in Exhibit 12 was taken. We do not know what if anything was paid to claimants for what was taken from them by the State, and we observe in passing, if payment there was, it was a defense to be established by the State of New York.
However, it is provided that “ On the filing of such description and map in the office of the department of state, the people of the state of New York, their officers and agents, may immediately enter upon and take possession of the property *420 so described for purposes connected with the flood control projects.” (L. 1936, ch. 862, as amd., § 7, subd. 4.) Such purposes are described in Exhibit 12 as follows :
Map and description of property in and to which an easement, as hereinafter defined, is deemed necessary by the Superintendent of Public Works to be acquired in the name of the People of the State of New York, by appropriation, for purposes connected with the Conklin-Kirkwood Flood Protection Project, — Clearing and Snagging Susquehanna River, pursuant to the Flood Control Law, being Chapter 862, Laws of 1936 as amended.
A permanent easement, interest and right to be exercised, in, on and over the property above delineated and hereinafter described, for the purpose of constructing, reconstructing, maintaining and operating thereon 1. stream channel, 2. work area, 3. facilities of Public and Private utilities, including the relocation thereof and 4. appurtenances to all structures including the rights to 1. Remove therefrom any and all material excavated, cut, razed, or torn down from the areas described herein or deposit any material thereon, 2. protect the bank of the improved Creeks adjacent thereto by any method deemed necessary by the owner of this easement, 3. grade, 4. clear and grub of trees, shrubs, brush, debris and structures, 5. place, keep and operate machines, tools and equipment, with the rights at all times of ingress, egress and regress by the State of New York, its assigns and/or their agents in the improvement for purposes connected with the Flood Protection Project in and to all those pieces or parcels of property hereinafter designated as Parcels No. 1 and 2. situate, lying and being partly in the Town of Conklin and partly in the Town of Kirkwood, in the County of Broome and State of New York, as shown on the accompanying map and described as follows:
Briefly, the work to be done under the project has been described as the ‘ ‘ clearing and snagging of the Susquehanna River at Conklin-Kirkwood, New York.” (Exhibit 3).
It is not pleaded nor is it contended that the State of New York was a trespasser. We find that it was not; and we are satisfied that it entered upon claimants’ lands pursuant to the authority of the above-quoted subdivision 4, and that in turn it gave such possession to the Federal Q-overnment as was necessary for the accomplishment of the express purpose of constructing or executing the Conklin-Kirkwood Flood Protection project in accordance with the plans drawn by the latter.
“ Claimants’ premises are located on the outside of a curve in the river, the waters of which flow in a straight direction for approximately 2,200 feet before curving to the west at claimants’ premises. At the time of claimants’ purchase thereof and prior to and up to the summer of 1955, the river bank was grown over with trees, shrubs, and like vegetation which was its condition when the project therein was commenced.
Also, in June of 1947 and up to the time of its destruction as is hereinafter set forth, there existed along the river bank of claimants’ property and at or near the top thereof a retaining wall constructed of 10" x 10" railroad ties which supported *421 the river bank immediately below claimants’ dwelling. Between the years 1945 and 1955 the Susquehanna River at Kirkwood, New York rose each year to stages varying from 13.16 feet to 20.83 feet in height. These annual high stages had had no unusual effect on the cover of trees, shrubs and like vegetation along claimants’ river bank or on said retaining wall, there being, however, some normal erosion of the bank under the natural condition thereof, and the wall sustaining some damage, viz., the dislocation and the falling out of individual logs from time to time which were replaced by claimants.
Employees of the contractor upon the commencement of the project entered upon claimants’ river bank and proceeded to cut to within an inch or so of the ground all trees, shrubs, and vegetation then and there growing from the top of the bank to the foot thereof. Large trees, however, were cut to within a foot of the ground. All along the foot of the bank and into the river bed roots and other growths were uprooted with the use of a bulldozer. Likewise vegetation, shrubs and bushes were removed from and trees were cut down on an island in the river opposite claimants’ river bank.
Following the completion of the project, there was a joint inspection of the same by representatives of the United States Government and of the State of New York, and the project was then accepted by and turned over to the State of New York. Thereafter and during the months of March and April, 1956, at times when the Susquehanna River was at high stages, the force of its flow eroded and carried away portions of claimants’ unprotected river bank and destroyed the retaining wall herein-before mentioned to an extent that its replacement is required for the protection of claimants’ land and improvements thereon.
We are satisfied that the flood control plan of the project was defective insofar as the premises of these claimants are concerned in that it exposed said premises and the afore-mentioned retaining wall to excessive, abnormal and erosive conditions reasonably foreseeable unaccompanied by precautions to guard against such conditions. (Coates, S. M. 79-118, and particularly S. M. 101.)
The Federal Government devised the flood plan and it constructed the project through an independent contractor which contractor was responsible to United States Army Engineers and to no one else. The State had agreed to provide and did, in fact, provide the necessary land for the project, and had agreed to operate and maintain the same in accordance with regulations prescribed by the Secretary of the Army after its completion.
*422 The entry upon the property herein and its use for the purposes of flood control was exclusive except that claimants could use the property in any manner and for any purpose or purposes which, in the opinion of the Superintendent of Public Works or other authorized representative acting for the People of the State of New York or its assigns, did not interfere with or prevent the user and exercise of the rights to be exercised under said entry and taking of posséssion. It does not appear when the State of New York did relinquish possession; and while in such possession of claimants’ property, the rights and obligations of the State of New York in connection therewith were not unlike those of an owner. Assuming this to be true, this leads to the inquiry whether the State under the circumstances violated any duty to claimants when it suffered the defective plan to be executed upon claimants’ land. We think that it did, and that the violation of said duty renders it liable to claimants for the damages sustained.
To the general rule that the owner or employer is not responsible for the negligence of an independent contractor, there are, however, a number of exceptions all based on the concept that there are certain legal duties and responsibilities which cannot be avoided by delegation to another. One of these exceptions is that an employer is subject to a nondelegable duty with respect to work which in the natural course of events will produce injury unless certain precautions are taken. (Bower v. Peate, 1 Q. B. D. 321, 326-327 [1876].) From the foregoing we conclude that the State of New York, under the circumstances, had a nondelegable duty and was bound to see to the doing of that which was necessary to prevent the mischief to be attendant upon the project. (Allen v. State of New York, 208 Misc. 385, affd. 2 A D 2d 644.) And in arriving at this conclusion we have not been unmindful of Central New York Broadcasting Corp. v. State of New York (206 Misc. 101, revd. 3 A D 2d 128).
Claimants have adduced evidence of cost of restoration of their property to its former condition of safety and also of diminution in market value. In Hartshorn v. Chaddock (135 N. Y. 116, 122-123) the court said: “ The owner is not in every case of injury to the soil, the trees or the fixtures, driven to proof of the diminution in value of the estate by reason of the injury, in order to establish his damages. The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, *423 such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible. [Citing cases] * * * When things attached to the soil, and, therefore, part of the realty, are injured or destroyed or some part of the soil itself carried away, the value of the thing injured or destroyed and the cost of replacing or restoring it, or the expense of restoring the soil to its condition prior to the injury or trespass, may be proved in an action by the owner to recover his damages. When all the evidence is in, it may turn out that the diminution in value of the freehold is the legal measure of damages, but the value of the thing taken or the cost of reparation is none the less evidence upon the question [citing cases].”
Evidence adduced by claimants through the use of both methods of assessing damages establishes claimants’ damages in the sum of $6,920, the reasonable cost of restoration being said sum (S. M. 127), and the difference or diminution between before and after market values of the property, the before market value being $9,000 (S. M. 135) and the after market value being $2,080 (S. M. 136), being also said amount. The State of New York adduced no evidence of damage.
We find no negligence on the part of the claimants proximately causing or contributing as a proximate cause to the happening resulting in damages to their property.
We conclude that claimants have been damaged in the sum of $6,920, and that they are entitled to recover judgment against the State of New York in said amount.
Let judgment be entered accordingly.