## (December 17, 1957)

BARBARA GRACE et al., Appellants-Respondents, v. CITY OF NEW YORK et al., Respondents-Appellants.

CROSS APPEALS (1) by plaintiffs from a judgment and amended judgment of the Supreme Court in favor of defendants, entered May 27, 1957 and August 8, 1957, upon a dismissal of the complaint by the court at a Trial Term at the close of plaintiffs' case, and (2) by defendants from said judgments insofar as they failed to dismiss the complaint on the merits.

MEMORANDUM BY THE COURT. The trial court at the end of the plaintiffs' case dismissed the complaint, but not upon the merits, upon the sole ground that there had been a failure to show that the accident and resulting injuries were caused by a hole in the sidewalk from which protruded two metal prongs. There was evidence from the superintendent of the building that this condition had existed for 31 years. In passing upon the motion, the truth of the evidence put in by the plaintiffs is assumed and the plaintiffs must have, in addition, the advantage of every reasonable inference that can be drawn from the facts proven. In our opinion it was error in implementing this rule to hold as a matter of law that the plaintiffs had failed to make a prima facie case.

Judgments appealed from reversed and new trial ordered.

FRANK, J. (dissenting). The trial court dismissed the complaint in this negligence action, but not on the merits. The majority of this court is reversing the judgment and ordering a new trial. We must dissent and vote to modify the judgment to direct a dismissal of the complaint on the merits.

We agree with the majority that there was proof of a defective condition in the sidewalk sufficient to create a question of fact. The crux of the issue is whether the plaintiff was injured by a fall resulting from that defect and at that point, or from some other cause and at another location on that sidewalk.

There is no dispute that the determination herein must be predicated upon the testimony of one Frances Caccaria who was walking with the female plaintiff when she fell and was injured. It has been urged that the testimony of the witness should be examined in the light of language difficulties. A reading of the record discloses no such difficulty, but on the contrary reveals that the witness was completely familiar with spoken English. The injured plaintiff did not observe a defective condition at the time of the occurrence, and no witness other than Mrs. Caccaria was called to establish causal connection.

From the testimony (the relevant portion is appended in a footnote*), it is manifest that Mrs. Caccaria gave two distinct and separate versions of what she observed at the time of the accident. One points to liability on the part of the defendants; the other exonerates them.

The plaintiff contends that the completely contradictory testimony given by the witness merely raises a question of credibility which should be determined solely by the jury. We cannot agree. We do not quarrel with the general rule

---

* On direct examination, Mrs. Caccaria testified in part as follows: " Q. Did you examine the spot where she tripped? A. No. Q. Did you see the spot where she tripped? A. Well, after she fell. Q. I mean, after she fell? A. Yes. * * * Q. Will you be good enough to describe in your own language, or your own words, just the condition of the spot where you say you saw her trip? A. Well, yes. There was a hole there and she tripped over that and her toe went in, and as I approached her to see what happened to her, the pain, the situation of her arm was so bad, I just fainted off."

On cross-examination, she testified: " Q. When this woman fell you were upset? A. Sure. Q. Your good friend down on the floor? A. Yes. Q. Screaming? A. That's right. Q. Painful, and yet you measured, or you saw, or you looked for the hole then? A. No, I didn't look for the hole then. * * * Q. You didn't hear her say she fell near the vault? A. She said she fell; we didn't know how near or how far. Q. You mean, at the time you didn't know? A. At that time, I didn't know, that's right. Q. You mean, from the time of the accident up until the time that the cop came, you didn't know where she fell? A. I told you before, I fainted, I didn't know where I was. * * * Q. I believe you testified the next day, or a few days later, you came back with Mr. Grace? A. Yes. Q. And Mr. Weiss? A. Yes. Q. To see the spot where she had fallen? A. That's right. Q. You don't know if it was a few days; is that your testimony? A. I don't know how long after that it was, I'm sorry, sir; I couldn't tell you how many days it took part. Q. In any event, you did come back? A. Yes, I did. Q. Was that the time you saw this hole that you mention? A. Yes. Q. That is the first time, isn't it, you noticed this hole? A. That's right. Q. At the time of the accident itself, you said you were a little confused, at the time the accident happened? A. Yes. Q. You hadn't noticed this hole before Mrs. Grace got to it, did you? A. No. Q. Then you fainted? A. That's right. Q. So that the day of the accident you didn't notice the hole at all; is that right? A. The time of the accident, no, I didn't. Q. It

of law that the credibility of a witness, in the absence of proof which makes the testimony entirely incredible, is always a jury question, and it is equally true where the credibility of the witness is impeached through prior contradictory testimony, prior extra-judicial statement, or by the testimony of another witness.

Our problem is different. It is one in which the proof is self-contradictory, and comes from the lips of the only eyewitness to the occurrence. There appears to be no case precisely in point, although several (*Froelich* v. *City of New York*, 199 N. Y. 466; *Ochs* v. *Wood*, 221 N. Y. 335; *Miano* v. *Schneider*, 1 Misc 2d 1039, affd. 3 A D 2d 900) upon cursory examination seem to indicate that the problem remains one of credibility requiring determination by the triers of the facts. A careful reading, however, indicates that under circumstances akin to those present here, self-contradictory testimony creates more than a problem of credibility and may destroy the cause of action. In the *Froelich* case, a witness gave contradictory testimony as to the manner in which a sewer was relaid. In holding that the credibility of the witness was for the jury, the court stated (p. 471): " Although there is a manifest inconsistency between the statement of this witness to the effect that the main rested upon the sewer, and his other statement that there was a wooden wedge between the main and the sewer, that also presented a discrepancy for the consideration of the jury, *since neither statement is distinctly antagonistic to the plaintiff's theory of the defendant Bradley's alleged negligence.*" (Emphasis supplied.)

The case of *Ochs* v. *Woods* was one to recover damages for fraud and deceit by which the plaintiff was induced to accept another instead of the defendant as owing him commissions. The plaintiff testified that he believed the defendant and relied upon the representations dealing with his acceptance of a corporation

---

was a few days later when you came back with the attorney and Mr. Grace? A. That's right. Well, we knew it was in front of that building right near that number where it says, " 38." Q. You knew the general location; is that right? A. That's right. Q. At that point there are some of these glass vault lights. Do you know what I mean by " vault lights "? A. Yes. Q. They come out from the building a certain number of feet; is that right? A. I Suppose. Q. Do you remember approximately how far from the building they came out? A. No, sir, I couldn't tell you that. Q. At any rate, they did come out for some feet? A. Yes. Q. Is that right? A. Yes, I suppose, but I couldn't tell you how far or how near the building. Q. You don't know to what extent they came out; is that right? A. No. Q. As far as where Mrs. Grace fell, do you know whether or not it was on those vault lights or not? A. No, I don't know. Q. You don't know whether it was on the vault lights? A. I don't know, I couldn't tell you. Q. When you came back a few days later, you did see a hole? A. Yes, we did. Q. As far as this condition that is on this photograph is concerned, who directed your attention to that, was that your attorney? A. No. When I came to the scenery, I knew it was near that because I had seen the number and I seen just about where the accident was where she fell. Q. You knew the general vicinity? A. That's right. Q. And you looked around and then you found this condition here? A. The condition was still there. Q. You didn't see that on the day of the accident because of the fact that you fainted? A. That's right. Q. The first time you saw it was three or four days later? A. Whenever it was when I went over. Q. As I say, you don't know whether or not it happened on the vault lights or not; is that right? A. Yes. Q. That is, you do not know? A. I do not know. Q. You were unconscious immediately and you were still unconscious at least — when you woke up, the cop was there: is that right? A. That's right."

for the payment of his commissions. On cross-examination, in connection with his refusal to divulge the name of his principal in the transaction, the plaintiff, in effect, stated that no credence could be placed on the word of the defendant. In reversing a nonsuit, the Court of Appeals (p. 340) pointed out that the contradictory testimony of the plaintiff "May have been made without any relation in the plaintiff's mind to the misrepresentations of the defendant".

In the *Miano* case, the credibility of a disinterested witness who testified that he saw the accident from a point some distance from the place of occurrence was attacked by calling a photographer who took photographs after the accident. The trial court in holding that the question was one of credibility stated (p. 1040): "Assuming that this disinterested witness is in error or mistaken as to the time at which he arrived on the scene, *after* the accident, this alleged discrepancy would not require that his testimony as to how the accident happened be rejected."

It thus appears that conflicting testimony by the same witness raises a question of credibility to be determined by the triers of the facts, if the contradictions do not go to a vital issue or the plaintiff's theory of the case. When, however, self-contradictory testimony upon the crucial issue in the case is given by the sole witness to an occurrence, we hold that it is no longer a question of credibility but rather one of sufficiency of proof.

Evidence so completely in conflict coming from the same witness is virtually no evidence at all. When the courts say there is no evidence to submit to a jury, it is not stated in a literal sense, but what is intended is that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established. (See *Matter of Case*, 214 N. Y. 199, 204, Cardozo, J.; *Matter of Akeson v. Salvage Process Corp.*, 305 N. Y. 438; *Blum v. Fresh Grown Preserve Corp.*, 292 N. Y. 241; *Matter of Horton*, 272 App. Div. 646, 650, affd. 297 N. Y. 891.)

We cannot and should not close our eyes to the clear renunciation of the proof upon which the case rests. While the direct testimony of the witness might impose liability upon the defendants, her testimony on cross-examination would necessarily require their complete exculpation. With the proof as consistent with one version as with the other, the nonsuit was proper. "When the precise cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover, and the evidence should not be submitted to the jury." (*White v. Lehigh Valley R. R. Co.*, 220 N. Y. 131, 135–136.) "It is a settled principle in the law of negligence which, it has been said, should never be lost sight of, that when the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, the case should not be submitted to the jury since, in such a case, the evidence fails to establish the essential fact. (*Baulec v. N. Y. & H. R. R. Co.*, 59 N. Y. 357.)" (*Rupert v. Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 94.)

While, under the circumstances, the dismissal of the complaint was proper, it should have been upon the merits. There is nothing in the record to indicate that other evidence would be available to the plaintiff on a new trial and it is the policy of the law as expressed by the Civil Practice Act (§ 482) to dispose of litigation with finality wherever possible and appropriate. (*Hansen v. City of New York*, 274 App. Div. 196). The judgment should be modified by striking the words "not on the merits" therefrom and, as so modified, should be affirmed.

The trial court at the end of the plaintiffs' case dismissed the complaint, but not upon the merits, upon the sole ground that there had been a failure to show that the accident and resulting injuries were caused by a hole in the sidewalk from which protruded two metal prongs. There was evidence from the superin-

tendent of the building that this condition had existed for 31 years. In passing upon the motion, the truth of the evidence put in by the plaintiffs is assumed and the plaintiffs must have, in addition, the advantage of every reasonable inference that can be drawn from the facts proven. In our opinion it was error in implementing this rule to hold as a matter of law that the plaintiffs had failed to make a prima facie case.

Botein, Bergan and Bastow, JJ., concur in Memorandum by the Court; Frank, J., dissents and votes to modify judgment so as to provide for dismissal of complaint on the merits, in opinion, in which Peck, P. J., concurs.

Judgments reversed and new trial ordered.